**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

DEANDRE WATSON,
*Defendant-Appellant.*

No. 08-10385

D.C. No.
CR-07-00336-
WHA-2

OPINION

Appeal from the United States District Court
for the Northern District of California
William H. Alsup, District Judge, Presiding

Argued and Submitted
July 13, 2009—San Francisco, California

Filed September 23, 2009

Before: Barry G. Silverman, Richard R. Clifton, and
Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Clifton

13739

**COUNSEL**

Joseph P. Russoniello, United States Attorney, Barbara J. Valliere, William Frentzen, and Erika R. Frick (argued), Assistant United States Attorneys, San Francisco, California, for the plaintiff-appellee.

Scott A. Sugarman, Sugarman & Cannon, San Francisco, California, for the defendant-appellant.

**OPINION**

CLIFTON, Circuit Judge:

Deandre Watson, who pled guilty to carjacking pursuant to a plea agreement containing a waiver of the right to appeal, challenges a condition of his super-vised release barring him from entering San Francisco without the prior approval of his probation officer. He argues that the district court did not provide the necessary notice before issuing this condition and that the condition itself violates his "constitutional rights to travel and move, to freedom of association, to intimate association with his family and related rights."

A waiver of the right to appeal does not bar a defendant from challenging an illegal sentence. We conclude, however, that the disputed supervised release condition directing Watson to stay out of San Francisco during the term of his super-

vised release unless he obtains permission from his probation officer is not unlawful. It is reasonably tied to the court's stated aims of rehabilitation and deterrence and is no more restrictive than reasonably necessary to serve those purposes. Nor do we find here any of the other circumstances that cause a waiver of appeal to be ineffective. The language of Watson's plea agreement waiver encompasses this appeal and the waiver was knowingly and voluntarily made given the circumstances surrounding the agreement. We accordingly dismiss the appeal.

## I. Background

On the night of March 14, 2007, Watson and co-defendant Maurice Bibbs jumped into a rental car parked on a San Francisco street. Unfortunately, they were not the ones who had rented the car. The woman for whom the car had been rented noticed the men entering her car and approached them. Bibbs removed a handgun from his jacket and brandished it at the victim, who was seven months pregnant at the time. She fled and called the police. The responding officers reported that when they arrived at the scene the victim was sobbing uncontrollably, appearing to have been traumatized by the incident. Watson and Bibbs drove off, but they were apprehended in the rental car about an hour later. A firearm was recovered from the back seat.

Watson and Bibbs were indicted for carjacking in violation of 18 U.S.C. § 2119 (Count One); and for using, carrying, and possessing a firearm in committing the crime of violence of carjacking in violation of 18 U.S.C. § 924(c)(1)(A) (Count Two). Bibbs was also indicted for tampering with a witness in violation of 18 U.S.C. § 1512(b)(1) (Count Three).

Watson entered into a written plea agreement in which he pled guilty to Count One of the indictment. Watson agreed "that a reasonable and appropriate disposition of this case, under the Sentencing Guidelines and 18 U.S.C. § 3553(a), is

as follows: 72 months imprisonment, 3 years of supervised release (with conditions to be fixed by the Court), no fine as I am unable to pay a fine, $100 special assessment and restitution to be determined by the Court." Watson further agreed "to give up my right to appeal my conviction(s), the judgment, and orders of the Court" and "to waive any right I may have to appeal any aspect of my sentence, including any orders relating to forfeiture and/or restitution." Watson also waived his right to bring any collateral attack on his conviction or sentence aside from a constitutional claim of ineffective assistance of counsel. Watson (and his attorney) confirmed that he had adequate opportunity to discuss the agreement with counsel and decided to enter the plea knowingly and voluntarily.

The district court conducted the change of plea hearing on February 7, 2008, going over the sentence set forth in the plea agreement. In particular, the court reminded Watson that he must "report and live under certain strict conditions" while on supervised release. It stated that it could not determine the appropriate sentence, however, until it examined Watson's Presentence Report (PSR). The court reviewed the plea agreement's appellate waiver provision with Watson, reenforcing that he would be "giving up [his] right to take an appeal." Watson confirmed that he understood all of these consequences and the court accepted his guilty plea.

The PSR noted Watson's "relative youth" and observed that it appeared he "did not plan the offense ahead of time, but made a rash, spur of the moment decision to go along with [Bibbs] and commit the instant offense." Watson's PSR included a statement from the case agent involved in the carjacking investigation that both Watson and Bibbs were members of the San Francisco "Eddy Rock" gang. The PSR also disclosed that Watson, who was only 19 at the time of sentencing, had already compiled a sorry record. He had been convicted in San Francisco as a juvenile for committing felony grand theft in September 2003 and misdemeanor burglary

in July 2004. As a result, Watson was placed in a residential program from September 2004 until August 2005, when he left the facility without permission. Watson was soon placed in a different program, but was removed and transferred to yet another institution two months later after a court determined that he had committed misdemeanor battery against his roommate. He was released in September 2006 and returned to his mother's home in San Francisco. Less than three months later he was arrested in San Francisco for carrying a concealed weapon, carrying a loaded firearm, and obstructing/resisting arrest.[1] Watson continued to live in his mother's home until his arrest for the current offense just six months after he was last released from custody.

The PSR was no more encouraging about the support Watson received from his family or others around him, concluding that Watson "appears to have received minimal guidance from his parents or other adults in his life. It is noteworthy that despite witnessing the murder of his best friend at age 15, [Watson] has not been offered or received any mental health treatment, despite his ongoing involvement in the juvenile probation system." Watson's mother "indicated that [Watson] can come to live with her after [his] release, but that she is moving to Marin[2] in the next couple of weeks." However, even though he had lived most of his life with his mother, the PSR reported that Watson "stated that his mother did not show much interest in his well being," and "that he has had little contact with his mother since his arrest, and she has only visited him one time while in custody."

During Watson's sentencing hearing on August 18, 2008, the court first accepted the plea agreement then imposed the

---

[1]The case stemming from these weapons charges was dismissed on May 21, 2008.

[2]Marin is the county immediately north of San Francisco, across the Golden Gate Bridge.

prison sentence. The following exchange took place as the court announced the supervised release condition in question:

> THE COURT: I am going to recommend — make it a condition that he not return to the city and county of San Francisco while on supervised release. He can live in this district, but not in San Francisco, because I see all — he'll be back in trouble again in three days. As soon as he — so he has to get a job and live in Oakland or live — if he's found again in San Francisco, he's going to go back into custody — unless it's with the permission of the probation officer.

> MR. SUGARMAN [Watson's attorney]:  Just so I understand and so he does [sic], you're saying he cannot going [sic] to anyplace in San Francisco?

> THE COURT:  Without prior permission on — while on supervised release. And the reason for that is a very good reason. I've seen this time and time again. Somebody comes out of prison. They go back to San Francisco. Within a week, they're back with the old guys and the old gang, and they are back in trouble. They got a gun. And then eventually, they get caught.

> Now, living in Oakland may not be much better, but at least they make new friends. Maybe some of those are law-abiding friends.

> And so I want to try this. I want you to be thinking about who he could live with over there that's a law-abiding relative — or it could be San Jose. I don't care where it is, as long as it's not the city and county of San Francisco.

> MR. SUGARMAN:  I suggest, your Honor, respectfully, I think that order is overbroad.

It is one thing to say he should not associate with a list of people. It's one thing to even say, "You should not appear in certain neighborhoods." This incident occurred in one neighborhood he lived in.

Second, to say that he can't go anywhere in San Francisco —

THE COURT:     Why does he have to come to San Francisco?

MR. SUGARMAN:     His mother is hospitalized, as she was a few weeks ago, for, apparently, a stroke. And he wants to go to San Francisco General to visit her.

THE COURT:     That would be okay. The probation officer — call him up. "Can I go see my mom? She's in the hospital."

Answer:     Yes.

MR. SUGARMAN:     He certainly has friends that are not criminally inclined. While some of them certainly were, I think that limits his travel; limits his right to petition for the redress of grievances; limits his right to go to City Hall — whatever he wishes to do. I believe it's broader than —

THE COURT:     Take an appeal if you — maybe it's waived. I don't know, but that's — I'm going to require that, because I think it's for his own good.

I promise you in the long run, he's going to be thanking me for this.

Mr. Watson, . . . You know, I do see people in your very position that come back in here four or

five years later, and they got an honest job. They're paying tax. They haven't committed any more crimes. They're off of drugs. It can happen. It can happen.

That's what I want to see happen for you.

What I know will happen if you get back into San Francisco, you'll be out soon. You'll still be a young guy. You'll go back to those old guys in Eddy Rock Gang or whatever it is. And pretty soon, the cops will pick you up with a gun. And there will be all these excuses. "I needed it for protection." It won't matter. You'll go back to jail. You've got to break that cycle.

That's why I'm — and I believe this thing about you can't — you can't come to San Francisco without probation prior approval. I'm going to put that in there.

Now, you got a great lawyer. Maybe he'll find a way to get an appeal out of this and declare that unconstitutional. And, you know, that will be great; but until then, this is going to be the deal, because I think it's for your own good.

MR. SUGARMAN:   My objection, your Honor, is: it does unconstitutionally limit his right to travel, to associate, to expression. Therefore, I think it's broader than it needs to be for supervised-release purpose.

THE COURT:   I disagree completely. So there it is.

The judge then imposed the sentence, referencing the geographical condition saying "this is the one we talked about. While on supervised release, he shall not enter the city and

county of San Francisco without the prior approval of the probation officer." The condition is listed as a "special condition[ ] of supervision" in the written judgment. Watson timely appealed.

## II.  Discussion

Watson only appeals the special condition of his supervised release requiring that he "not come to the City and County of San Francisco, without the prior approval of the probation officer." He maintains the condition is invalid because (1) he did not receive notice of the condition prior to the announcement of his sentence, and (2) the condition constitutes an abuse of discretion under the sentencing statute and violates his constitutional rights. The government responds that Watson was not entitled to advance notice of the supervised release condition and the restriction is legally justified since it is reasonably related and tailored to rehabilitation and deterrence goals. The government argues that since none of the other exceptions to appellate waiver apply, Watson waived his right to bring this appeal.

We review the district court's order of a supervised release condition for abuse of discretion. *United States v. Williams*, 356 F.3d 1045, 1052 (9th Cir. 2004). "In applying this standard of review, we give considerable deference to a district court's determination of the appropriate supervised release conditions, recognizing that a district court has at its disposal all of the evidence, its own impressions of a defendant, and wide latitude." *United States v. Stoterau*, 524 F.3d 988, 1002 (9th Cir. 2008) (internal quotation marks omitted). Whether a supervised release condition illegally exceeds the permissible statutory penalty or violates the Constitution is reviewed de novo. *See United States v. Gementera*, 379 F.3d 596, 600 n.5 (9th Cir. 2004). Whether Watson has waived his right to appeal is also reviewed de novo. *See United States v. Bibler*, 495 F.3d 621, 623 (9th Cir. 2007).

*A.    Validity of the Supervised Release Condition*

"On appeal, we first consider whether the district court committed significant procedural error, then we consider the substantive reasonableness of the sentence." *United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc). We therefore begin with the objection to lack of notice and then consider the supervised release condition itself.

1.   Notice of the Condition

The district court announced the restraint on entering San Francisco for the first time in the course of pronouncing Watson's sentence. While Watson protested the actual condition at sentencing, he did not object on the grounds of insufficient notice, so we review that claim for plain error. *See, e.g.*, *United States v. Evans-Martinez*, 530 F.3d 1164, 1167 (9th Cir. 2008) ("Because [defendant] failed to object at sentencing to the adequacy of notice his claim is reviewed for plain error."). "Before an appellate court can correct an error not raised at trial, there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Jordan*, 256 F.3d 922, 926 (9th Cir. 2001) (internal quotation marks omitted).

The parties have engaged in a lively debate about whether the restriction imposed by the district court falls within the conditions contemplated by the sentencing guidelines, thereby putting Watson on constructive notice of it. *See, e.g.*, *United States v. Wise*, 391 F.3d 1027, 1033 (9th Cir. 2004) ("Where a condition of supervised release is not on the list of mandatory or discretionary conditions in the sentencing guidelines, notice is required before it is imposed, so that counsel and the defendant will have the opportunity to address personally its appropriateness."); *United States v. T.M.*, 330 F.3d 1235,

1242 (9th Cir. 2003) (explaining that a defendant "is considered to have advance notice of any condition that is contemplated by the sentencing guidelines"); 18 U.S.C. § 3563(b)(13) (permitting the court to order a defendant to "reside in a specified place or area, or refrain from residing in a specified place or area"); U.S. Sentencing Guidelines Manual § 5D1.3(c)(8) (2008) (recommending as a "standard" supervised release condition that "the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered, or other places specified by the court").

**[1]** We conclude for a simpler reason that even if more explicit notice was required, the lack of notice in this case did not rise to the level of plain error. Watson's attorney reacted quickly to challenge the scope of the condition at issue. He effectively argued before the district court what there was to argue, presenting the same substantive objections subsequently raised on appeal. It is clear to us that the district court understood Watson's position, but the judge responded clearly: "I disagree completely. So there it is." It would not have made any difference if Watson and his attorney had been given an opportunity to return to the court to discuss the subject a few days later, or had been given more specific notice a few days in advance. The error, if there was any, did not affect Watson's substantial rights. *Accord United States v. Sullivan*, 451 F.3d 884, 896 (D.C. Cir. 2006) (rejecting a belated challenge to supervised release conditions "because there is no showing here that the judge would have imposed less onerous conditions even if [defendant] had been afforded 'advance' notice"); *United States v. McKissic*, 428 F.3d 719, 726 (7th Cir. 2005) (affirming a condition of supervised release under plain error review despite the absence of due notice reasoning the district court could modify the condition at any time).

2.    Substance of the Condition

**[2]** The Sentencing Reform Act, as set forth in 18 U.S.C. § 3583(d), allows the district court to order a non-mandatory

condition of supervised release, like the one featured here, if that condition:

> (1) is reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D);
>
> (2) involves no greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B), (a)(2)(C), and (a)(2)(D); and
>
> (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a)[.]

The cross-referenced portion of 18 U.S.C. § 3553(a) instructs the court to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed —
>
> . . .
>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

"In sum, conditions are permissible if they are reasonably related to the goals of deterrence, protection of the public, or

rehabilitation of the offender, taking into account the offender's history and personal characteristics, and involve no greater deprivation of liberty than is reasonably necessary for the purposes of supervised release." *United States v. Goddard*, 537 F.3d 1087, 1089 (9th Cir. 2008). The government bears the burden of showing that these statutory standards are met. *Stoterau*, 524 F.3d at 1002.

"While a district court's discretion to set conditions of supervised release is broad even when those conditions affect fundamental rights, restrictions infringing upon fundamental rights are reviewed carefully." *United States v. Soltero*, 510 F.3d 858, 866 (9th Cir. 2007) (internal quotation marks and citations omitted). "A restriction on a defendant's [constitutional right] is nonetheless valid if it: (1) is reasonably related to the goals of deterrence, protection of the public, and/or defendant rehabilitation; (2) involves no greater deprivation of liberty than is reasonably necessary to achieve these goals; and (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)." *Id.* (internal quotation marks omitted); *see also United States v. Terrigno*, 838 F.2d 371, 374 (9th Cir. 1988). A condition does not have to relate to the offense of conviction so long as it serves the statutorily-identified goals. *See United States v. Rearden*, 349 F.3d 608, 619 (9th Cir. 2003).

**[3]** As a general rule, sentencing judges need not articulate their reasons for imposing a condition of supervised release provided that whether the court abused its discretion can be gleaned from the record. *United States v. Betts*, 511 F.3d 872, 876 (9th Cir. 2007). "However, to impose a condition that implicates a significant liberty interest, the district court must support its decision on the record with evidence justifying the condition." *United States v. Daniels*, 541 F.3d 915, 924 (9th Cir. 2008).

The breadth of the geographical limitation here gives us some pause and requires a careful examination of the justify-

ing factors before sustaining it. The district court could have been both more expansive and more precise in articulating its reasons for imposing such a broad condition. Nevertheless, it is clear that the district court was persuaded that the only way to prevent Watson from returning to a life of further misconduct was to force him to make a new life somewhere else. The record outlined above supports that conclusion, most notably Watson's history of repeated misconduct, his association with the "Eddy Rock" gang in San Francisco, and the poor support he has received from his family and surrounding home environment. Separating a convicted felon from negative influences in his prior life is reasonably related to the permissible goals of deterrence and rehabilitation and is a common purpose of supervised release. *See, e.g.*, *United States v. Ross*, 476 F.3d 719, 722 (9th Cir. 2007) ("Special conditions may seek to prevent reversion into a former crime-inducing lifestyle by barring contact with old haunts and associates, even though the activities may be legal." (internal quotation marks omitted)).

**[4]** We have repeatedly upheld residency and travel conditions aimed at keeping a convicted defendant away from circumstances that might lead him to offend again. *See, e.g.*, *Goddard*, 537 F.3d at 1092 (affirming requirement that a convicted child pornography consumer get approval from his probation officer for any residence because it assists in monitoring proximity to minors); *United States v. Bee*, 162 F.3d 1232, 1235-36 (9th Cir. 1998) (ordering convicted child molester not to loiter in locations primarily used by children held to be proper exercise of court's broad discretion).

The harder question is whether the restriction is broader than is reasonably necessary. Watson argues that it is and therefore violates 18 U.S.C. § 3583(d). We conclude otherwise.

District courts are given some discretion in fashioning conditions of supervised release in part because of our uncer-

tainty about how rehabilitation is accomplished. *See, e.g.*, *Gementera*, 379 F.3d at 603. For years, courts have imposed conditions barring defendants from having contact with certain identified persons, with known gang members, with persons involved with drugs, and so forth. The phenomenon of recidivism fueled by offenders falling back into old patterns with their old trouble-making friends is well known. As the experienced district judge observed: "I've seen this time and time again. Somebody comes out of prison. They go back to San Francisco. Within a week, they're back with the old guys and the old gang, and they are back in trouble. They got a gun. And then, eventually, they get caught." There is logic to the district court's view that the disputed condition might be more effective in forcing Watson to avoid contact with bad influences than a less extensive one.

**[5]** Excluding Watson from the City of San Francisco, unless he obtains the permission of his probation officer, will not impose an overwhelming burden on him. Watson points to our recent decision in *United States v. Riley*, No. 08-50009, ___ F.3d ___, 2009 WL 2461896, at *2-*3 (9th Cir. Aug. 13, 2009) (striking prohibition on defendant's use of a computer to access any material relating to minors remarking it imposed "a blanket *ban* on [his] use of a computer, not use subject to approval by his probation officer"), arguing that the limitation here is similarly broader than is reasonably necessary. But the limitation overturned in *Riley* prevented that defendant, who was previously employed as a technical engineer, from using a computer to access a wide range of material, including some which might be essential to his employment. *Id.* Watson has not identified any depravation that would have a similar impact on him. He has listed many innocent activities that he could engage in within the boundaries of the city: "sleeping in his own home, taking a City-sponsored summer job, visiting his cousins, shopping, attending a concert, seeking government assistance or visiting a park." But he can do almost all of these things elsewhere, too. The only connections important to Watson and unique to San Francisco that Watson

identified are his long-time residence at his mother's home and his relationships with his family in the area. But the district court had been informed by the PSR both that Watson's mother was moving from San Francisco to Marin, and that his relationship with his family, and with his mother in particular, was not necessarily a positive thing.

Nor did Watson "suggest any alternative, more limited, exclusion boundary to aid the district court in the exercise of its discretion." *United States v. Garrasteguy*, 559 F.3d 34, 44 (1st Cir. 2009). In *Riley*, we noted that there were other more sharply focused conditions that could be expected to accomplish the goal of the overbroad restriction. 2009 WL 2461896, at *3. It is not clear what narrower condition would work for Watson. The point of the district court's broad exclusion was to get Watson out of the environment that had not served him well to date and to make him try to start fresh. Letting him go back to the territory harboring the same bad influences as before is not likely to accomplish that goal.

**[6]** Furthermore, the restriction placed on entering San Francisco is not absolute. That Watson may obtain permission from his probation officer to visit the city helps to mitigate the severity of the limitation. *See Goddard*, 537 F.3d at 1092 (noting residency restriction allowed probation officer to monitor inappropriate proximity to minors); *Rearden*, 349 F.3d at 620-21 (determining condition prohibiting convicted child pornography supplier from possessing or using a computer with internet access was not overly restrictive "because it is not absolute; rather, it allows for approval of appropriate online access by the Probation Office"). If the probation officer denies his requests, Watson may seek relief from the district court under 18 U.S.C. § 3583(e)(2). *See United States v. Miller*, 205 F.3d 1098, 1100 (9th Cir. 2000).

Our decision is consistent with those of other circuits that have endorsed analogous territorial conditions of supervised release. For instance, the Third Circuit held that a special con-

dition of supervised release preventing a convicted drug dealer from entering the two counties where her mother and children lived without her probation officer's permission involved liberty infringements "no greater than are necessary to promote her rehabilitation by keeping her away from negative, if not wholly disastrous, influences." *United States v. Sicher*, 239 F.3d 289, 292 (3d Cir. 2000). Similarly, the Eleventh Circuit affirmed a condition of supervised release requiring a convicted drug dealer, who was especially popular with the high school crowd, to "stay out of Fulton County, Georgia for the first two years of his probation unless he received the permission of his probation officer." *United States v. Cothran*, 855 F.2d 749, 750, 752-53 (11th Cir. 1988); *see also United States v. Alexander*, 509 F.3d 253, 256-58 (6th Cir. 2007) (approving a condition forcing the defendant to live in a city hundreds of miles away since he violated the "more limited restriction" barring him, absent permission from his probation officer, from the town where he committed several alcohol-related offenses).

Watson relies heavily on the Sixth Circuit's opinion in *Johnson v. City of Cincinnati*, 310 F.3d 484 (6th Cir. 2002). We view that decision as entirely distinguishable. *Johnson* dealt with a city ordinance excluding individuals from "drug exclusion" zones if they were arrested or taken into custody for certain drug offenses in one of the zones. *Id.* at 487-88. Applying strict scrutiny, *Johnson* struck the statute down on numerous constitutional grounds, including for violating the right to intrastate travel. *Id.* at 503-04. However, the *Johnson* Court explicitly contrasted the ordinance with the constitutionally valid Bail Reform Act, commenting that the ordinance "(1) automatically applies to persons arrested or convicted without any individualized consideration, let alone consideration by a neutral arbiter, and (2) does not require any particularized finding that the arrested or convicted individual is likely to repeat his or her drug crime." *Id.* at 503. It went on to conclude "due process . . . demands some individualized consideration before an individual's right to localized travel

can be restricted." *Id.* at 504. Watson's supervised release condition was imposed with individualized consideration. Moreover, post-*Johnson* the Sixth Circuit upheld a more restrictive geographical limitation than the one Watson faces using the framework for evaluating supervised release conditions. *See Alexander*, 509 F.3d at 256-58.

**[7]** In sum, we conclude that the challenged condition is reasonably related to the goals of rehabilitation and deterrence and is no broader than legitimately necessary to serve those purposes. *See Bee*, 162 F.3d at 1236 ("[E]ven very broad conditions are reasonable if they are intended to promote the probationer's rehabilitation and to protect the public.").

## B.    *Validity of the Waiver of Appeal*

The government argues that in his plea agreement Watson waived the right to appeal any aspect of his supervised release conditions, warranting dismissal of this appeal. Watson contends that the waiver provision does not cover the issue raised here and that several exceptions to appeal waivers apply regardless.

### 1.    Coverage of the Appeal Waiver

**[8]** "A defendant's waiver of his appellate rights is enforceable if the language of the waiver encompasses his right to appeal on the grounds raised, and if the waiver was knowingly and voluntarily made." *United States v. Joyce*, 357 F.3d 921, 922 (9th Cir. 2004). Plea agreements are interpreted using contract principles with any ambiguity construed in the defendant's favor. *Id.* at 923. "The scope of a knowing and voluntary waiver is demonstrated by the express language of the plea agreement." *United States v. Leniear*, 574 F.3d 668, 672 (9th Cir. 2009) (internal quotation marks omitted). "This court looks to the circumstances surrounding the signing and entry of the plea agreement to determine whether the defen-

dant agreed to its terms knowingly and voluntarily." *United States v. Baramdyka*, 95 F.3d 840, 843 (9th Cir. 1996).

In his plea agreement, Watson agreed "to give up my right to appeal my conviction(s), the judgment, and orders of the Court" and "to waive *any right* I may have to appeal *any aspect of my sentence*." (emphases added). Watson promised not to "file any collateral attack on my conviction(s) or sentence" except for an ineffective assistance of counsel claim. Watson further "agree[d] that a reasonable and appropriate disposition of this case, under the Sentencing Guidelines and 18 U.S.C. § 3553(a)," would include "3 years of supervised release (*with conditions to be fixed by the Court*)." (emphasis added).

**[9]** In *Joyce*, our court addressed a similar plea agreement that recited "I . . . knowingly and voluntarily agree to waive my right under 18 U.S.C. § 3742 to appeal *any aspect of the sentence imposed in this case*, if the court imposes a sentence within the parameters of this agreement." 357 F.3d at 923. We determined that the reference to "any aspect of the sentence" unambiguously encompassed supervised release terms. *Id.* at 923-24; *see also United States v. Goodson*, 544 F.3d 529, 538 (3d Cir. 2008) ("By waiving his right to take a direct appeal of his sentence, [defendant] waived his right to challenge the conditions of his supervised release, which were by definition a part of his sentence."). Watson's agreement to forego the right to appeal "any aspect of my sentence" similarly covers supervised release conditions. *See Joyce*, 357 F.3d at 923-24; *see also* 18 U.S.C. § 3583(a) (empowering the court to impose supervised release terms "as a part of the sentence"). While Watson's plea agreement does not specifically mention 18 U.S.C. § 3742, "the only source of any right to appeal the sentence," *Joyce*, 357 F.3d at 923, he did promise to waive "any right" to appeal "any aspect" of his sentence, which necessarily encompasses appeals brought under 18 U.S.C. § 3742.

**[10]** The record shows that Watson waived his appellate rights knowingly and voluntarily. In addition to the written terms of the plea agreement itself, the district court "reviewed the charges and each of the terms of the plea agreement and asked [Watson] questions to ensure that he understood the contents of his plea agreement." *Baramdyka*, 95 F.3d at 844. In particular, the court explained that supervised release means "After you come out of prison, you don't just get to go free. Again, you've got to report and live under certain strict conditions. That's supervised release. Okay?" to which Watson responded, "Yes." With respect to the appellate waiver, the court reiterated that "if I sentence you in accordance with this agreement or — doesn't really matter, as long as I wind up sentencing you and you don't withdraw from this agreement, you're giving up your right to take an appeal." Watson signaled that he understood this. The court summed up the waiver again, explaining "So, basically, if I go along with your agreement here and sentence you ultimately to the six years, *so forth*, you are stuck with it, *you have no appeals*, and just be sitting in prison for the next six years less time served." then asked, "Do you understand?" (emphases added). Watson answered, "Yes." "This court has held such procedures sufficient to find a knowing and voluntary waiver." *Baramdyka*, 95 F.3d at 844; *see also United States v. Johnson*, 67 F.3d 200, 203 (9th Cir. 1995) ("The fact that [defendant] did not foresee the specific issue that he now seeks to appeal does not place that issue outside the scope of his waiver.").

### 2. Exceptions to the Appeal Waiver

**[11]** Watson's right to appeal the condition of his supervised release is not preserved by any exception to appellate waiver. "An appeal waiver will not apply if: 1) a defendant's guilty plea failed to comply with Fed. R. Crim. P. 11; 2) the sentencing judge informs a defendant that she retains the right to appeal; 3) the sentence does not comport with the terms of the plea agreement; or 4) the sentence violates the law." *Bibler*, 495 F.3d at 624. We concluded above that the sen-

tence was not unlawful. The inapplicability of each of the other exceptions is addressed in turn.

i. Adequacy of the Plea Colloquy

Federal Rule of Criminal Procedure 11(b)(1)(N) mandates that "[b]efore the court accepts a plea of guilty . . . the court must address the defendant personally in open court . . . . [and] must inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence." Since Watson did not object to the adequacy of the plea colloquy before the district court, we review for plain error. *United States v. Ross*, 511 F.3d 1233, 1235 (9th Cir. 2008); *see United States v. Arellano-Gallegos*, 387 F.3d 794, 796 (9th Cir. 2004).

**[12]** We have held that a district court did not plainly err in allowing the prosecutor to merely summarize the plea agreement in open court and then affirming that the summary comported with the defendant's understanding of the agreement. *United States v. Ma*, 290 F.3d 1002, 1005 (9th Cir. 2002). *Ma* relied in part on the defendant's prior acknowledgment that she read and understood the plea agreement. *Id.* Given the diligent colloquy undertaken here and Watson's written assurances that he adequately reviewed the terms of the plea agreement, we see no plain error under Rule 11. *See id.*; *cf. Arellano-Gallegos*, 387 F.3d at 796-97 (setting aside the appellate waiver because there was a "wholesale omission" in the record of any reference to the waiver).

ii. Comments by the Judge

"[W]here a judge advises a defendant, *without qualification*, that he or she has a right to appeal, the defendant will be deemed to have such a right even though it was waived in the plea bargain." *United States v. Jeronimo*, 398 F.3d 1149, 1153 n.2 (9th Cir. 2005) (emphasis added). For instance, in *United*

*States v. Buchanan*, the defendant's appellate waiver was deemed unenforceable when the "district court twice stated that [he] had a right to appeal his sentence." 59 F.3d 914, 917-18 (9th Cir. 1995).

After Watson's attorney objected to the breadth of the territorial supervised release restriction, the district court replied "Take an appeal if you — maybe it's waived. I don't know, but that's — I'm going to require that, because I think it's for his own good." Following further elaboration as to why the condition was necessary the court mentioned, "Now, you got a great lawyer. Maybe he'll find a way to get an appeal out of this and declare that unconstitutional. And, you know, that will be great; but until then, this is going to be the deal, because I think it's for your own good."

**[13]** We confronted a similar scenario in *United States v. Aguilar-Muniz*, 156 F.3d 974 (9th Cir. 1998), and determined the district court's admonition that "if you believe the waiver is unenforceable, you can present that theory to the appellate court" did not affect the appeal waiver in the plea agreement. *Id.* at 977. Likewise, a judge's comment that "It's up to the Ninth Circuit to decide whether under the circumstances [defendant has] lost his right of appeal" did not disturb the appellate waiver in *United States v. Schuman*, 127 F.3d 815, 817 (9th Cir. 1997). The district court's ambivalent comments to Watson did not invalidate his waiver.

iii.　　Scope of the Plea Agreement

**[14]** Federal Rule of Criminal Procedure 11(c)(1)(C) provides that a plea agreement specifying "that a specific sentence or sentencing range is the appropriate disposition of the case . . . binds the court once the court accepts the plea agreement[ ]." Watson's plea agreement expressly states "I agree that a reasonable and appropriate disposition of this case" includes "3 years of supervised release (with conditions to be fixed by the Court)." Watson's argument that the geographi-

cal supervised release condition "increased his penalty and was not part of the plea agreement" is without merit. *See Jeronimo*, 398 F.3d at 1153 ("[W]e will generally enforce the plain language of a plea agreement if it is clear and unambiguous on its face.").

## III.   Conclusion

**[15]** The condition of supervised release providing that Watson not enter the City and County of San Francisco without the approval of his probation officer did not make Watson's sentence illegal. In light of Watson's waiver of his right to appeal, we dismiss this appeal. *See United States v. Jacobo Castillo*, 496 F.3d 947, 954 (9th Cir. 2007) (en banc); *United States v. Lopez-Armenta*, 400 F.3d 1173, 1177 (9th Cir. 2005).

**DISMISSED.**