**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 28 2015

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 13-10402 |
| Plaintiff - Appellee, | D.C. No. 4:11-cr-02325-JGZ |
| v. | |
| AURELIANO NAVARRO-AMAVIZCA, | MEMORANDUM* |
| Defendant - Appellant. | |

Appeal from the United States District Court
for the District of Arizona
Jennifer G. Zipps, District Judge, Presiding

Submitted May 13, 2015**

Before:     LEAVY, CALLAHAN, and M. SMITH, Circuit Judges.

Aureliano Navarro-Amavizca appeals from the district court's judgment and

challenges his guilty-plea conviction and 121-month sentence for conspiracy to

possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 846,

841(a)(1) and (b)(1)(A)(ii).  Pursuant to *Anders v. California*, 386 U.S. 738 (1967),

---

\*     This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

\*\*     The panel unanimously concludes this case is suitable for decision
without oral argument.  *See* Fed. R. App. P. 34(a)(2).

Navarro-Amavizca's counsel has filed a brief stating that there are no grounds for relief, along with a motion to withdraw as counsel of record. Navarro-Amavizca has filed a pro se supplemental brief and the government has filed an answering brief.

Navarro-Amavizca has waived the right to appeal his conviction and sentence. Our independent review of the record pursuant to *Penson v. Ohio*, 488 U.S. 75, 80 (1988), discloses no arguable issue as to the validity of the waiver. *See United States v. Watson*, 582 F.3d 974, 986-88 (9th Cir. 2009). Navarro-Amavizca contends that the district court failed to provide the advisements required by Federal Rule of Criminal Procedure Rule 11. Because Navarro-Amavizca did not object to the adequacy of the plea colloquy before the district court, we review only for plain error. *See United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004). Navarro-Amavizca has failed to show a reasonable probability that, but for the alleged Rule 11 errors, he would not have pleaded guilty. *See id.* We accordingly dismiss the appeal. *See Watson*, 582 F.3d at 988.

Counsel's motion to withdraw is **GRANTED.**

**DISMISSED.**

LEAVY, Circuit Judge, concurring:

[separate attachment]

*United States v. Navarro-Amavizca*, 13-10402
LEAVY, Circuit Judge, concurring.

Compelled by *United States v. Black*, 733 F.3d 294 (9th Cir. 2013), I concur in the dismissal of Navarro-Amavizca's appeal. *See also United States v. Black*, 750 F.3d 1053 (9th Cir. 2014) (Reinhardt, J., dissenting from denial of r'hrg en banc, Kozinski, J., joining). I join in inflicting a manifest and outrageous injustice on Navarro-Amavizca, as we in the judicial branch are now doing to others similarly situated. In addition, we are doing great damage to ourselves.

The fictions that make up the facts of this case and those of *Black* came from the same cookie cutter. Similar to *Black*, we have an informant who solicited Navarro-Amavizca's co-defendant, Cota-Ruiz, who in turn recruited Navarro-Amavizca and two others to participate in the mental activity of agreeing to rob fictitious individuals at a fictitious drug house.

For a typical willful crime, it takes a person with a certain disposition who finds the right opportunity. We know that there are people among us who may be disposed to commit crimes. We, as a society, therefore are willing to spend billions of dollars to deny such persons the opportunity to commit crimes. Thus, we have locks, alarm systems, street lights, surveillance cameras, police officers, IRS and bank auditors, security personnel, and the list goes on.

In this case, an agent of the Department of Justice, Bureau of Alcohol,

Tobacco, Firearms and Explosives (ATF) agreed in writing with an informant that the informant was to introduce an undercover ATF agent to targeted individuals for the purpose of discussing a home invasion robbery. The informant then found Navarro-Amavizca's co-defendant Cota-Ruiz, who in turn recruited Navarro-Amavizca and two others to agree to rob the fictitious drug stash house. After an agreement was reached to move forward in the planning of the robbery, the informant joined Navarro-Amavizca, Cota-Ruiz, and another of the co-defendants in doing "a line of cocaine" to celebrate this agreement.

Thereafter, the undercover ATF agent was introduced to three persons found by the informant to be disposed to commit the robbery. He later explained the opportunity to the fourth conspirator. Instead of maintaining a barrier to criminal opportunity, the ATF agent posed as a disgruntled drug courier and presented a golden opportunity for robbery on a silver platter. He described the interior of a fictitious drug house and two fictitious persons, one of whom was armed with a fictitious gun, guarding 22 to 39 kilograms of fictitious cocaine. When the fantasies of the defendants merged with the fictions presented by the government, a conspiracy was generated for which each of the four defendants is now in prison for more than ten years.

It strikes me as significant that the opportunity offered by the government in

2

the form of an "insider job" was so valuable to the conspirators that they agreed that the government agent could have 50 percent of the loot, and the other four defendants would split the remaining half.

Three defendants, Cota-Ruiz, Navarro-Amavizca, and Arreola-Guerra, had no prior criminal histories. A fourth defendant, Varela-Rojas, had one prior felony for attempting to break into a car. Faced with the possibility of a maximum life sentence and a 15-year mandatory minimum sentence on the conspiracy to possess cocaine and the conspiracy to possess the firearm, the four defendants accepted a joint plea deal with a penalty of ten to twelve years in prison if they plead guilty to both counts and waived all appeal rights. The government, continuing its total control of events from start to finish, dismissed the firearm count after the guilty plea was accepted, thus allowing the court to lawfully sentence each defendant within the 10-12 year prison range provided in the government's plea deal.

The assistant United States attorney, speaking at co-defendant Cota-Ruiz's sentencing, described the evil in recruiting persons to conspire to commit crimes:

> As for Mr. Cota-Ruiz, the government is recommending that he be sentenced at the top of the plea agreement range of 12 years, or 144 months. It is true that he does not have any priors. However, he was involved in every meeting. He was present from the beginning. He recruited his co-defendants. He basically led this charge, and those factors kind of make up for the fact that he doesn't have any priors. *But for him, this would not have happened.* But for his willingness to

3

go forward with an armed rip, we would not be here today.

(Excerpt of record p. 56, emphasis added).

If Cota-Ruiz is deserving of punishment for recruiting others, then isn't the paid informant who, "but for" his recruitment of Cota-Ruiz, also deserving of punishment? And what about the conduct of the ATF agent who executed his well-designed plan to imprison four individuals, all of whom, "but for" the ATF agent's conduct, would be free today? And, on up the chain, what about the role of the prosecutor, who "but for" the prosecution, would have no defendants in court for sentencing?

The government's role in criminal law enforcement should not involve treating people differently because of their motive for obeying the law. If one person obeys the law because he is not disposed to do otherwise, and another person obeys the law because he does not have an opportunity to do otherwise, why, from a civic standpoint, are they not equally innocent?

Judge Noonan, concluding his dissent in *Black*, stated: "As the executive branch of our government has failed to disavow this conduct, it becomes the duty of the judicial branch to refuse to accept these actions as legitimate elements of a criminal case in a federal court." *Id.* at 318. I take one step further and question how the judicial branch, by approving the government's conduct, can be

4

conducting itself any better than the executive branch.

The infliction of a 121-month prison sentence on a defendant who, if simply left alone by our government, would otherwise be free, is a manifest injustice. In the absence of *Black*, I would hold that the district court abused its discretion by failing to use its supervisory power to dismiss the indictment to preserve the integrity of the judicial process. Thus, the denial of the motion to withdraw the guilty plea, including the waiver of the right to appeal, would also be in error. Nevertheless, because Navarro-Amavizca's appeal waiver is valid, the appeal must be dismissed.