**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
     *Plaintiff-Appellee*,

   v.

JAMES CLEVELAND MANY WHITE
HORSES,
     *Defendant-Appellant.*

No. 19-30018

D.C. No.
9:07-cr-00063-
DWM-1

OPINION

Appeal from the United States District Court
for the District of Montana
Donald W. Molloy, District Judge, Presiding

Argued and Submitted December 12, 2019
Seattle, Washington

Filed July 6, 2020

Before: Michael Daly Hawkins and M. Margaret
McKeown, Circuit Judges, and Robert W. Pratt,[*] District
Judge.

Opinion by Judge McKeown

---

[*] The Honorable Robert W. Pratt, United States District Judge for
the Southern District of Iowa, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed the district court's imposition of a special condition of supervised release upon the defendant, an enrolled member of the Blackfeet Indian Nation, after he violated the conditions of his probation through alcohol and drug-related infractions.

The special condition prohibits the defendant from residing in the town of Browning, Montana, which is the tribal headquarters of the Blackfeet Nation, or visiting the town without prior approval of his probation officer.

The panel rejected the defendant's contentions that the special condition is tantamount to an illegal banishment or exclusion from the Blackfeet Reservation and that it infringes the tribal sovereignty and right of self-government of the Blackfeet Nation. The panel also held that the residency restriction is substantively reasonable.

### COUNSEL

Colin M. Stephens (argued), Smith & Stephens P.C., Missoula, Montana, for Defendant-Appellant.

Kalah Anne Paisley (argued) and Timothy A. Tatarka, Assistant United States Attorneys; Katherine Cole, Legal

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Intern; Kurt G. Alme, United States Attorney; United States Attorney's Office, Great Falls, Montana; for Plaintiff-Appellee.

## OPINION

McKEOWN, Circuit Judge:

James Many White Horses, an enrolled member of the Blackfeet Indian Nation, challenges a special condition of his term of supervised release, imposed by the district court after he repeatedly violated the conditions of his probation through alcohol and drug-related infractions. Special Condition 11 prohibits Many White Horses from residing in the town of Browning, Montana, or visiting the town without the prior approval of his probation officer. That condition is coupled with another, requiring short-term residential counseling treatment in Browning. Browning is the tribal headquarters of the Blackfeet Nation and the sole incorporated town on the Blackfeet Reservation. Many White Horses argues that the district court lacked the authority to impose Special Condition 11, and that it is substantively unreasonable because it involves a greater deprivation of liberty than is reasonably necessary to accomplish the goals of supervised release.

It is well settled that a district court may impose a geographic or residency restriction when it is properly supported by the record and substantively reasonable. *See United States v. LaCoste*, 821 F.3d 1187, 1192–93 (9th Cir. 2016). Because the condition "involves no greater deprivation of liberty than is reasonably necessary," we affirm. *See* 18 U.S.C. § 3583(d)(2).

## BACKGROUND

In 2008, James Many White Horses pled guilty to conspiracy to possess with intent to distribute methamphetamine. He was sentenced to 78 months in custody and 180 months of supervised release. Between 2014 and 2018, Many White Horses violated the terms of his supervised release nine times, which resulted in four revocations. Eight violations involved the use of either alcohol, methamphetamine, or another illegal substance, and all but one took place in Browning, where Many White Horses resides much of the time.

In 2019, while on supervised release, Many White Horses used methamphetamine in Great Falls, Montana. While still intoxicated, he made the two-hour drive back to his mother's home in Browning. When he arrived home, his mother called his probation officer to report the supervised release violation.

As a result of this violation, the district court revoked supervised release and imposed a sentence of six months custody and a new term of five years of supervised release. The district court also imposed a set of "Special Conditions" on the term of supervised release.

Special Condition 11—the subject of this appeal—places the following restrictions upon Many White Horses:

> The defendant shall not reside within Browning, Montana. The defendant shall not enter the town of Browning, Montana without the prior approval of the supervising probation officer. To obtain approval, the defendant shall provide the probation officer with the purpose of his visit to Browning, the

expected duration of his stay in Browning, a phone number at which he can be reached during his stay in Browning, and address(es) of the place(s) he will visit in Browning, and a list of persons he intends to see in Browning.  The defendant shall contact the supervising probation officer as directed during the defendant's stay in Browning.

The court also imposed Special Condition 12, which requires Many White Horses to "participate in the short-term residential treatment program at Crystal Creek in Browning, Montana."

## ANALYSIS

## I.  The Residency Restriction is a Legitimate Condition of Supervised Release

Many White Horses first claims that the geographic restriction exceeded the legal authority of the district court because the condition diminished the sovereignty of the Blackfeet Nation.  Although Many White Horses did not raise this argument at the time of sentencing, we review de novo the legal authority of the district court to impose the condition.  *See United States v. Watson*, 582 F.3d 974, 981 (9th Cir. 2009) ("Whether a supervised release condition illegally exceeds the permissible statutory penalty or violates the Constitution is reviewed de novo.").

When a district court revokes a defendant's term of supervised release, the new sentence may include an additional term of supervised release.  *See* 18 U.S.C. § 3583(h).  Congress has specifically authorized district courts to impose special conditions of supervised release requiring that a defendant "refrain from frequenting

specified kinds of places or from associating unnecessarily with specified persons; . . . reside in a specified place or area, or refrain from residing in a specified place or area; . . . [and] report to a probation officer as directed by the court or the probation officer."   18 U.S.C. § 3563(b)(6), (13), (15). Consistent with this statutory authority, we have held that "residency restrictions are unquestionably permissible as a general matter." *LaCoste*, 821 F.3d at 1192.

Many White Horses does not dispute that "the court generally had authority to include a geographic restriction," but goes on to argue that it cannot be "one that intrudes on his status as a dual citizen of both the United States and the Blackfeet Nation, nor one that intrudes on the sovereignty of the Blackfeet Nation." He challenges Special Condition 11 on the grounds that it is tantamount to an illegal banishment or exclusion from the Blackfeet Reservation, and that it infringes the tribal sovereignty and right of self-government of the Blackfeet Nation. Neither argument is persuasive.

## A. The Condition is not an Illegal Banishment or Exclusion

To begin, Special Condition 11 is not a de facto banishment or exclusion from the Blackfeet Reservation. The condition allows Many White Horses to freely travel or reside in all but one quarter square mile of the 1.5 million acres of reservation land, restricting only his access to Browning itself. He is also free to visit his family, to participate in tribal life, and to receive tribal services in Browning—he simply must seek advance approval from his probation officer so that the officer knows his location and can evaluate the potential risks of his visit. Finally, Special Condition 12 affirmatively requires Many White Horses to visit Browning in order to participate in the short-term residential treatment program at Crystal Creek, a fact that

only underscores that Many White Horses is not banished or expelled from even Browning itself.

Many White Horses offers two cases to bolster his argument. The first, *United States v. Castillo-Burgos,* involved a sua sponte deportation order that exceeded statutory authority. 501 F.2d 217 (9th Cir. 1974). Many White Horses, by contrast, has not been deported. The second, *United States v. Abushaar*, is similarly unhelpful. 761 F.2d 954 (3d Cir. 1985). Abushaar was a Syrian citizen convicted of making a fraudulent application for status as a permanent resident. The Third Circuit reversed the order requiring him to serve his probation outside of the United States, finding no support for the claim that such a condition had a rehabilitative role. Citing to *Castillo-Burgos*, the court also held that the condition functioned as an illegal banishment condition because it effectively deported Abushaar from the United States—an act that must be carried out by the Immigration and Naturalization Service. *Id.* at 960–61.

Unlike in *Abushaar*, there is ample support for the justification that Special Condition 11 will serve to support Many White Horses's rehabilitation and to protect the community of Browning from his destructive behavior. The condition also brings Many White Horses under increased supervision by his probation officer, not less. Finally, the condition does not equate to deportation.

Rather than an illegal banishment, Special Condition 11 is instead almost identical to the condition of supervised release that the Eleventh Circuit upheld in *United States v. Cothran*, 855 F.2d 749 (11th Cir. 1988). Cothran was sentenced for willfully distributing cocaine to a minor. As a condition of his probation, he was required to remain outside of Fulton Country, Georgia, unless he received the consent

of his probation officer.  The Eleventh Circuit upheld the condition and explained that Cothran's temporary removal from the county was not analogous to the illegal "banishment" conditions struck down in cases where the defendant was deported for the probationary period.  *Id.* at 752.  The court went on to note that the condition still allowed Cothran to visit the county with the permission of his probation officer, and that this arrangement allowed Cothran access to educational and employment opportunities that he might require.  *Id.*  Likewise, the condition here is neither a banishment nor exclusion from the Blackfeet Reservation.

## B.  Tribal Sovereignty of the Blackfeet Nation

Although the Blackfeet Nation is "physically within the territory of the United States and subject to ultimate federal control, they nonetheless remain a separate people, with the power of regulating their internal and social relations." *United States v. Wheeler*, 435 U.S. 313, 322 (1978) (internal quotation marks removed).  Consistent with that power, "[i]n many cases, a tribe's decision to temporarily exclude a member will be another expression of its sovereign authority to determine the makeup of the community."  *Tavares v. Whitehouse*, 851 F.3d 863, 876 (9th Cir. 2017).  Many White Horses overreads these general principles of tribal sovereignty in claiming that Special Condition 11 usurps the Blackfeet Nation's authority to exercise control over its members through the power to banish or exclude tribal members.

Many White Horses's argument conflates two distinct issues: the authority of the Blackfeet tribe over its own members and the authority of the federal government over its citizens, including tribal members. Many White Horses mistakenly assumes that the condition functions as a

banishment from tribal lands, rather than as a temporary restraint on his ability to visit a tiny portion of the reservation absent permission from his probation officer. *See Cothran*, 855 F.2d at 752 (temporary restraint on entering county without probation officer's permission is not an illegal banishment). An external condition that is not a banishment does not conflict with the sovereign authority of the Blackfeet tribe to govern the banishment or exclusion of its members.

The tribe's authority does not preclude the federal government from exercising its own authority over Many White Horses, including incarcerating him, conscripting him into the armed forces, or imposing geographic restrictions requiring that he not reside, or travel to, certain tribal lands without prior approval. These two sources of sovereignty—federal and tribal—co-exist in our system of government. Here, the federal government's exercise of authority over Many White Horses does not infringe the inherent sovereignty of the Blackfeet Nation.

For these reasons, the district court did not exceed its legal authority when it imposed Special Condition 11.

## II. The Residency Restriction is Substantively Reasonable

A condition of supervised release must be both free of procedural error and substantively reasonable. *Watson*, 582 F.3d at 981. Many White Horses does not challenge procedural validity, as he concedes that the district court sufficiently explained its reasons for imposing the condition at sentencing. We therefore turn to the question of substantive reasonableness, which we review for abuse of discretion. *See United States v. Napulou*, 593 F.3d 1041, 1044 (9th Cir. 2010).

While a district court has broad discretion to impose special conditions of supervised release, the conditions must be "reasonably related" to deterrence, protection of the public, and/or rehabilitation and cannot involve "a greater deprivation of liberty than is reasonably necessary for the purposes [of deterrence, protection of the public, and/or rehabilitation]." 18 U.S.C. § 3583(d)(1)–(2). The condition here merits careful review. *See United States v. Wolf Child*, 699 F.3d 1082, 1089 (9th Cir. 2012) ("Conditions affecting fundamental rights . . . are reviewed carefully.") (internal quotation marks and citation removed); *see also Watson*, 582 F.3d at 983.

The district court imposed the condition only after nine violations resulted in four revocations of Many White Horses's supervised release. Since 2014, Many White Horses has engaged in a clear pattern of destructive behavior while in Browning, including repeated use of methamphetamine and alcohol, drunken and disorderly conduct, and physical and domestic abuse—all of which took place while he was on release. After this appeal was filed, but before oral argument, Many White Horses's term of supervised release was revoked yet again after he received permission to visit Browning, and while there, used methamphetamine and became violent.

In view of Many White Horses's pattern of relapse and destructive behavior, the district court faced the need to craft a restriction that would address both rehabilitation and public safety. The court recognized that Browning was a magnet and a trigger for behavior that violated the conditions of Many White Horses's supervised release. In fact, at his most recent revocation hearing, even Many White Horses himself acknowledged, "I think you're right, your Honor," when the district court explained that the defendant was

unable to prevent himself from using drugs and violating the conditions of his supervised release while living in Browning.  Many White Horses's suggestion that less restrictive conditions would be sufficient, such as a prohibition on using drugs and alcohol, simply falls flat in the face of his past conduct.  The district court gave Many White Horses numerous chances to serve his term of supervised release under lesser restrictions, and he has demonstrated that they are insufficient.

The court was also cognizant of Many White Horses's need for rehabilitation and sensitive to the significance of Browning in his life.  In light of that significance, the court ordered Many White Horses to attend a temporary residential drug treatment program at a facility in Browning.

"We have repeatedly upheld residency and travel conditions aimed at keeping a convicted defendant away from circumstances that might lead him to offend again." *Watson*, 582 F.3d at 983.  Many White Horses admittedly has "important . . . and unique" connections to Browning, the reservation's only incorporated municipality.  *Id.* at 984. This case thus merits a closer look than the classic use of a residential condition that we have long endorsed.[1]  Even so, Special Condition 11 is neither too broad geographically nor does it impose an impermissible burden on Many White

---

[1] *Watson* involved a condition barring the defendant from entering San Francisco.  582 F.3d at 984.  For all of that city's charms, its relationship to a resident cannot compare to the unique role a federal reservation holds in Indian life.  These bonds, coupled with the tribal resources that cannot be accessed elsewhere, foster a connection far more important and unique than a resident's typical connection to a municipality.

Horses's liberty given his repeated violation of lesser restrictions.

Unlike the residency condition upheld by the Sixth Circuit in *United States v. Alexander* on a very similar set of facts, Many White Horses is not required to live hundreds of miles from his family and community. 509 F.3d 253, 255–56 (6th Cir. 2007) (upholding a residency restriction that required defendant to live hundreds of miles from his family and his federally-recognized Indian community without the ability to visit after previously imposed conditions of supervised release had proven ineffective). Instead, he is merely prohibited from living in the town of Browning itself. Many White Horses remains free to reside in a nearby unincorporated town, East Glacier Park Village, or in one of the other numerous small towns surrounding the reservation.

With the permission of his probation officer, Many White Horses is also free to visit Browning for any other purpose, so long as he "provide[s] the probation officer with the purpose of his visit to Browning, the expected duration of his stay in Browning, a phone number at which he can be reached during his stay in Browning, and address(es) of the place(s) he will visit in Browning, and a list of persons he intends to see in Browning." The fact that the geographic restriction is not absolute, and Many White Horses may visit with the approval of his probation officer, "helps to mitigate the severity of the limitation." *Watson*, 582 F.3d at 984 (contrasting a geographic restriction that allows for approved visitation with more restrictive conditions).

This requirement does not unduly restrict Many White Horses's ability to visit his family and community, to participate in tribal life, to receive treatment in Browning, and to live nearby. Far from a de facto banishment, Special Condition 11 is a targeted set of requirements that preserves

his ability to visit Browning while still providing his probation officer with tools to help protect Many White Horses and his community from his self-destructive behavior. The district court chose a path that "involve[d] no greater deprivation of liberty" than was reasonably necessary under the circumstances and was reasonably related to deterrence, protection of the public, and rehabilitation. *See* 18 U.S.C. § 3583(d)(1)–(2).

**AFFIRMED.**