**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

v.

EVAN HARRIS,
      *Defendant-Appellant.*

No. 09-50113

D.C. No.
5:07-cr-00166-
VAP-1

OPINION

Appeal from the United States District Court
for the Central District of California
Virginia A. Phillips, District Judge, Presiding

Argued and Submitted
November 4, 2010—Pasadena, California

Filed January 4, 2011

Before: J. Clifford Wallace and Susan P. Graber,
Circuit Judges, and Richard Mills, Senior District Judge.*

Opinion by Judge Wallace

---

*The Honorable Richard Mills, Senior United States District Judge for the Central District of Illinois, sitting by designation.

## COUNSEL

Carlton Gunn, Deputy Federal Public Defender, Los Angeles, California for defendant-appellant Evan Harris.

Jean-Claude Andre (argued), Assistant U.S. Attorney; Christine C. Ewell, Assistant U.S. Attorney, Los Angeles, California, for plaintiff-appellant United States of America.

## OPINION

WALLACE, Senior Circuit Judge:

Harris appeals from his sentence for violating 18 U.S.C. § 922(g)(1) (2006). Because Harris waived the right to bring

the instant appeal, we refuse to exercise jurisdiction over Harris's claims, and we dismiss his appeal.

## I.

On March 10, 2008, Harris pleaded guilty, pursuant to a written plea agreement, to being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). At sentencing, the government requested that Harris's sentence be enhanced pursuant to U.S.S.G. § 2K2.1(a) based on Harris's previous first-degree burglary conviction in California state court. According to the government, Harris's prior burglary conviction qualified for the enhancement as a "crime of violence" under section 2K2.1(a). The district court agreed and adjusted upward Harris's sentence six levels based on the enhancement. *See* § 2K2.1(a)(4). The district court then sentenced Harris to thirty-six months' imprisonment. In his appeal, Harris contends that the district court erred when it concluded that California first-degree burglary is a "crime of violence" under section 2K2.1(a).

Before addressing the merits of Harris's claims, we must consider the government's argument that this appeal should be dismissed based on the appeal waiver contained in Harris's plea agreement. Generally, appellate courts " 'retain[ ] subject matter jurisdiction over [an] appeal by a defendant who has signed an appellate waiver.' " *United States v. Jacobo Castillo*, 496 F.3d 947, 957 (9th Cir. 2007) (en banc), *quoting United States v. Gwinnett*, 483 F.3d 200, 201 (3d Cir. 2007). Absent some miscarriage of justice, however, " 'we will not exercise that jurisdiction to review the merits of [an] appeal if we conclude that [the defendant] knowingly and voluntarily waived' " the right to bring the appeal. *Id.* (emphasis added), *quoting Gwinnett*, 483 F.3d at 201. Thus, we first turn our attention to whether Harris knowingly and voluntarily waived the right to appeal the claims that are the subject of the instant appeal.

## II.

**[1]** " '[A] defendant's waiver of his appellate rights is enforceable if (1) the language of the waiver encompasses his right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made.' " *United States v. Charles*, 581 F.3d 927, 931 (9th Cir. 2009) (footnote omitted), *quoting United States v. Jeronimo*, 398 F.3d 1149, 1154 (9th Cir. 2005). Where an appeal raises issues encompassed by a valid, enforceable appellate waiver, the appeal generally must be dismissed. *Castillo*, 496 F.3d at 957; *see also United States v. Vences*, 169 F.3d 611, 613 (9th Cir. 1999).

**[2]** When considering a criminal defendant's appeal waiver, " '[o]ur analysis begins with the fundamental rule that plea agreements are contractual in nature and are measured by contract law standards.' " *Jeronimo*, 398 F.3d at 1153, *quoting United States v. Clark*, 218 F.3d 1092, 1095 (9th Cir. 2000); *see also United States v. Watson*, 582 F.3d 974, 986 (9th Cir. 2009) ("Plea agreements are interpreted using contract principles with any ambiguity construed in the defendant's favor"), *cert. denied*, 130 S. Ct. 3461 (2010). Thus, "[i]f the terms of the plea agreement" and an appeal waiver are "clear and unambiguous" on their face, we "will not look to extrinsic evidence to determine their meaning." *Clark*, 218 F.3d at 1095. "We review de novo whether a defendant has waived his right to appeal by entering into a plea agreement and the validity of such a waiver." *Jeronimo*, 398 F.3d at 1153.

## III.

In his plea agreement, Harris stipulated that section 2K2.1(a)(4)(A)'s "crime of violence" enhancement was applicable under the Guidelines. He further stipulated to a total offense level of seventeen, which included the enhancement at issue. He then expressly agreed to the following appeal waiver:

Defendant gives up the right to appeal any sentence . . . and the manner in which the sentence is determined, provided that (a) the sentence is within the statutory maximum . . . and is constitutional, (b) the Court in determining the applicable guideline range does not depart upward in offense level or criminal history category and determines that the total offense level is [seventeen] or below, and (c) the Court imposes a sentence within or below the range corresponding to the determined total offense level and criminal history category.

In other words, Harris waived his right to challenge a sentence within a guideline range, even if his sentence included the "crime of violence" enhancement.

**[3]** The record fully supports the validity of Harris's waiver. Harris does not contend that his waiver was unknowing or involuntary. Furthermore, "[i]n addition to the written terms of the plea agreement itself, the district court 'reviewed the charges and each of the terms of the plea agreement and asked [Harris] questions to ensure that he understood the contents of his plea agreement.' " *Watson*, 582 F.3d at 986, *quoting United States v. Baramdyka*, 95 F.3d 840, 844 (9th Cir. 1996). The district court explained to Harris that "by pleading guilty, you're giving up most of your rights to appeal your conviction to a higher court." The district court then asked Harris whether he understood that he was waiving his right of appeal as long as the court calculated his total offense level as seventeen or less. Harris stated that he understood and indicated that he had no questions about the waiver. At his sentencing, when the district court further reiterated to Harris that he had expressly waived his appellate rights, Harris raised no objection or argument to the contrary. These procedures are " 'sufficient to find a knowing and voluntary waiver.' " *Id.* at 987, *quoting Baramdyka*, 95 F.3d at 844.

Notwithstanding the record of his waiver, Harris contends that the government later modified the plea agreement to per-

mit appeal of the district court's total offense-level determination. While Harris stipulated in the plea agreement that his prior first-degree burglary was a "crime of violence" under section 2K2.1(a)(4)(A), he points to an email communication wherein the government allowed him to withdraw that stipulation. The government apparently allowed Harris to retract this stipulation based on our now-withdrawn decision in *United States v. Aguila-Montes de Oca*, 553 F.3d 1229, 1233 (9th Cir. 2009), *rehearing en banc granted*, 594 F.3d 1080 (2010), wherein we held that California first-degree burglary is not a "crime of violence" under section 2L1.2(b) of the Guidelines. In light of *Aguila-Montes de Oca*, the government agreed that Harris could argue for a lower total offense level at sentencing, but indicated that it would still request the enhancement because section 2K2.1(a) defines "crime of violence" differently than section 2L1.2(b). *See United States v. Beltran-Munguia*, 489 F.3d 1042, 1050 (9th Cir. 2007) (explaining that the definition of "crime of violence" is narrower in section 2L1.2(b) than in other provisions). The relevant portion of the email states,

> RE: the issue of HARRIS' base offense level. We agree that you should be allowed to argue that the base offense level should be changed in his favor because there is new law on the topic since the plea agreement. I'll still likely maintain that the offense level should be 20 and leave it to the Court to decide.

According to Harris, the government's permission to challenge the enhancement extended not only to sentencing, but also to a potential appeal.

**[4]** Harris's argument, however, is foreclosed by the plain and unmodified language contained in his plea agreement. Subject to a few limited exceptions that are not applicable here, the plea agreement provides that Harris "g[a]ve[ ] up the right to appeal *any* sentence . . . and the *manner* in which the sentence is determined . . . ." (Emphasis added.) This waiver

clearly encompasses his challenge to the district court's decision to apply the "crime of violence" enhancement at issue. Nothing in the record indicates that the government later modified the *waiver provision* when it allowed Harris to seek a reduced offense level at sentencing. Instead, because Harris had previously stipulated that the "crime of violence" enhancement was appropriate, the government simply allowed Harris to retract his prior *stipulation* to the enhancement and to a total offense level of seventeen. The appeal waiver remained intact, unequivocally stating that Harris gave up his right to appeal his sentence if his offense level was seventeen or below, which it was. Nothing in the record suggests that the parties deviated from the clear text of the waiver provision. *See Clark*, 218 F.3d at 1095 (9th Cir. 2000) (we need not look to extrinsic evidence to determine meaning of plea agreement that is clear and unambiguous on its face).

Harris's argument relies on the structure of the plea agreement. According to Harris, the parties might have structured the appeal waiver differently if he had not originally stipulated to a base-offense level of seventeen. He contends that this is so because "the offense level used in the appeal waiver correspond[s] with the offense level set forth in the guidelines stipulation." Based on this relationship, Harris asserts that a modification of base-offense level necessarily modifies the appeal waiver. As we explained earlier, however, the appeal waiver provision is clear and unambiguous, and there is nothing in it suggesting that waiver was premised on the structure of the plea agreement. If the parties intended for this structure to be controlling, they would have manifested that intent in the original plea agreement or through a written amendment to that agreement. Further, the mere fact that Harris preserved an issue for argument before the *district* court does not prevent him from waiving that argument on *appeal*. It is not extraordinary for a defendant to enter into a plea agreement that permits him to make certain arguments at sentencing while simultaneously waiving the right to raise the same arguments on appeal. *See, e.g.*, *Watson*, 582 F.3d at 980-81 (crimi-

nal defendant waived right to appeal terms of his supervised release even though defendant was permitted to challenge those terms at his sentencing).

## IV.

**[5]** We conclude that Harris waived his right to bring the instant appeal. We therefore do not reach the merits of his challenge to the district court's decision to enhance his sentence pursuant to U.S.S.G. § 2K2.1(a)(4).

**APPEAL DISMISSED.**