**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JONATHAN WELLS,
*Defendant-Appellant*.

No. 19-10451

D.C. No.
5:18-cr-00567-
LHK-1

OPINION

Appeal from the United States District Court
for the Northern District of California
Lucy H. Koh, District Judge, Presiding

Argued and Submitted October 18, 2021
San Francisco, California

Filed March 22, 2022

Before: J. Clifford Wallace, Ronald M. Gould, and
Carlos T. Bea, Circuit Judges.

Opinion by Judge Wallace;
Dissent by Judge Bea

## SUMMARY[*]

**Criminal Law**

The panel dismissed in part an appeal from the district court's judgment and order imposing sentence and conditions of supervised release, vacated the judgment in part, and remanded with instructions to the district court to clarify a special condition of supervised release to avoid a constitutional violation.

The panel wrote that because the language of the waiver of the right to appeal in the plea agreement is unambiguous, and the defendant knowingly and voluntarily waived the right to appeal, the panel was obligated to enforce the waiver and would not exercise the jurisdiction to review the merits of the appeal unless any exceptions to the appeal waiver apply.

Explaining that a waiver of the right to appeal does not bar a defendant from challenging an "illegal sentence," which has a very limited and precise meaning in this context, the panel observed that the defendant does not have any statutory basis for challenging the terms of his sentence as illegal. The panel declined to extend the meaning of an "illegal sentence" to encompass sentences that potentially violate 18 U.S.C. § 3583(d), which governs imposition of conditions of supervised release, and 18 U.S.C. § 3553, which sets forth factors to be considered in imposing a sentence.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

In light of potential ambiguity in this court's caselaw regarding when an appeal-waiver exception based on constitutional challenges applies or on the scope of the exception, the panel attempted to clarify. Guided by *United States v. Bibler*, 495 F.3d 621 (9th Cir. 2007), and its progeny, the panel concluded that a waiver of the right to appeal a sentence does not apply if (1) the defendant raises a challenge that the sentence violates the Constitution; (2) the constitutional claim directly challenges the sentence itself; and (3) the constitutional challenge is not based on any underlying constitutional right that was expressly and specifically waived by the appeal waiver as part of a valid plea agreement. Following that precedent, the panel wrote that it must address the defendant's constitutional claims that directly challenge the terms of his supervised release, where the defendant waived his general right to appeal "any aspect" of his sentence but did not expressly waive any specific constitutional right. Except for the defendant's constitutional challenges to the terms of his supervised release, the panel enforced the waiver and dismissed the appeal.

The panel addressed on the merits the defendant's three constitutional challenges: (1) Special Condition No. 3 (computer ban) is unconstitutionally vague; (2) Special Condition No. 5 (internet ban) violates his First Amendment rights; and (3) both conditions are an unconstitutional delegation of authority because the conditions contain language that specify that the restrictions are subject to the approval of the probation officer.

The panel held that Special Condition No. 3, whose definition of "computer" potentially could be understood to encompass household objects, is unconstitutionally vague. The panel wrote that because Special Condition No. 3

violates a constitutional right, it is an "illegal" sentence and the waiver in the defendant's plea agreement does not bar the appeal. The panel declined to apply the appeal waiver, and exercised its jurisdiction to consider the issue. Because the condition is *a fortiori* unconstitutionally vague on the merits, the panel vacated and remanded with instructions for the district court to delineate explicitly that the prohibition only covers computers and computer-related devices that can access sexually explicit conduct.

Because the use of the internet was essential and integral to the offense of conviction, the receipt of child pornography, the panel rejected the defendant's First Amendment challenges to Special Condition No. 5. Because Special Condition No. 5 does not violate the Constitution, it is not an "illegal" sentence, and in light of waiver of the right to appeal, the panel dismissed the defendant's challenges to that condition.

As to the defendant's contention that Special Condition Nos. 3 and 5 unconstitutionally delegate authority to the probation officer, which the defendant did not argue in the district court, the panel wrote that it did not need to reach this issue because the special conditions are not manifestly unjust. It concluded that even considering the merits, the special conditions are not an unconstitutional delegation of authority.

Dissenting, Judge Bea wrote that this case should be decided by the court sitting en banc because *Bibler*, 495 F.3d 621 (holding that an exception to valid appeal waivers exists if the appellant claims a violation of a constitutional right), and *United States v. Joyce*, 357 F.3d 921 (9th Cir. 2004) (dismissing an appeal based on a valid appeal waiver even though the defendant claimed his sentence violated his First

Amendment rights), both control this case yet are entirely irreconcilable with one another.

## COUNSEL

Leah Spero (argued), Spero Law Office, San Francisco, California; Mara K. Goldman and Dejan M. Gantar, Assistant Federal Public Defenders; Steven G. Kalar, Federal Public Defender; Federal Public Defenders Office, San Jose, California; for Defendant-Appellant.

Merry Jean Chan (argued), Assistant United States Attorney, Chief, Appellate Section, Criminal Division; David L. Anderson, United States Attorney; United States Attorney's Office, San Francisco, California; for Plaintiff-Appellee.

## OPINION

WALLACE, Circuit Judge:

Appellant Jonathan Wells appeals from the district court's judgment and order imposing sentence and conditions of supervised release. We have jurisdiction under 28 U.S.C. §§ 1291, 3742. We review *de novo* "[w]hether an appellant has waived his right to appeal" pursuant to the terms of a plea agreement, *United States v. Joyce*, 357 F.3d 921, 922 (9th Cir. 2004), and "[w]hether a supervised release condition illegally exceeds the permissible statutory penalty or violates the Constitution," *United States v. Watson*, 582 F.3d 974, 981 (9th Cir. 2009). Because Wells has waived his right to appeal, we refuse to exercise jurisdiction over his claims–except for his constitutional violation claims–and we dismiss his appeal. However, we vacate in

part and remand with instructions to the district court to clarify Special Condition No. 3 to avoid a constitutional violation.

## I.

On April 28, 2016, police officers executed a search warrant for Wells' residence for evidence relating to possession of child pornography. Wells was subsequently arrested and interviewed by detectives, and he admitted to using peer-to-peer (P2P) applications to seek child pornography by means of keyword search for the past several years. Wells estimated he had downloaded approximately 20,000 files of child pornography, which were stored in various computers and external hard drives. Officers also found 69 compact discs or digital file discs that included files of child pornography.

On November 27, 2018, Wells was charged with one count of receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2), (b)(1). In a written plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(A)–(B), Wells pled guilty to the receipt of child pornography. He was sentenced to 76 months' imprisonment followed by five years of supervised release. In addition to the standard conditions of supervised release, the district court imposed 16 special conditions of supervised release. In this appeal, Wells challenges Special Condition Nos. 3 and 5. Special Condition No. 3 bans the possession and use of any computer without prior approval of the probation officer and Special Condition No. 5 bans the access to any internet or on-line computer service without approval of the probation officer.

## II.

## A.

We first turn to whether Wells knowingly and voluntarily waived the right to appeal the conditions of his supervised release.  "A defendant's waiver of his appellate rights is enforceable if the language of the waiver encompasses his right to appeal on the grounds raised, and if the waiver was knowingly and voluntarily made."  *Joyce*, 357 F.3d at 922–23 (citation omitted).  "Plea agreements are contracts between a defendant and the government," which can contain a waiver of a defendant's right to appeal.  *Id.* at 923 (citation omitted).    Since "[p]lea agreements are contractual by nature and are measured by contract law standards," we "enforce the literal terms of the plea agreement" but generally "construe ambiguities in favor of the defendant."  *United States v. Franco-Lopez*, 312 F.3d 984, 989 (9th Cir. 2002) (citations omitted).  Thus, when the language of a plea agreement is clear and "[a]bsent some miscarriage of justice," we "will not exercise [the] jurisdiction to review the merits of [an] appeal if we conclude that [the defendant] knowingly and voluntarily waived the right to bring the appeal."  *United States v. Harris*, 628 F.3d 1203, 1205 (9th Cir. 2011) (internal quotation marks and citations omitted).

In this case, the plea agreement language is clear.  The plea agreement states: "I agree to give up my right to appeal the judgment and all orders of the Court. I also agree to give up my right to appeal any aspect of my sentence."  Dist. Ct. Dkt. No. 10 ¶ 4.  We have repeatedly held that "any aspect" of a sentence includes "not only any term of imprisonment, but also fines and conditions of supervised release."  *Joyce*, 357 F.3d at 923; *see also Watson*, 582 F.3d at 986 ("We determined that the reference to 'any aspect of the sentence'

unambiguously encompassed supervised release terms."). In addition, the plea agreement expressly acknowledges that special conditions of supervised release will be part of the sentence imposed. The plea agreement states that "based on the nature of the offense, the Court should impose" two specific special conditions of supervised release, which require Wells to submit to searches and refrain from accessing or using any file-sharing P2P network or software. Dist. Ct. Dkt. No. 10 ¶ 8.

Wells knowingly and voluntarily agreed to the plea agreement and the waiver to appeal his sentence. The plea agreement was signed by both Wells and his counsel, which acknowledges that his "decision to plead guilty is made voluntarily, and no one coerced or threatened [him] to enter into this Agreement." Dist. Ct. Dkt. No. 10 ¶ 19. His counsel also confirmed that he "fully explained to [Wells] all the rights that a criminal defendant has and all the terms of this Agreement," and that Wells "understands all the terms of this Agreement and all the rights [he] is giving up by pleading guilty . . . [and his] decision to plead guilty is knowing and voluntary." *Id.* Moreover, at the sentencing hearing, the district judge provided Wells with "final advisement" and stated: "Mr. Wells, there was a plea agreement in your case, and in paragraph 4 of your plea agreement, you gave up your right to appeal your conviction, the judgment, orders of the court, any aspect of your sentence, including any forfeiture or restitution order." Dist. Ct. Dkt. No. 29 at 58:22–59:2. Because the language of the waiver is unambiguous and Wells knowingly and voluntarily waived the right to bring the appeal, we are obligated to enforce the waiver and will not exercise the jurisdiction to review the merits of the appeal unless any exceptions apply. *See Harris*, 628 F.3d at 1205.

**B.**

We next turn to whether any exceptions to the waiver of the right to appeal apply. Even if a defendant knowingly and voluntarily waives the right to appeal his sentence, we have held that "[a] waiver of the right to appeal does not bar a defendant from challenging an *illegal* sentence." *Watson*, 582 F.3d at 977 (emphasis added). In this context, an "illegal sentence" has a very limited and precise meaning. We have defined "illegal sentence" to mean "one not authorized by the judgment of conviction or in excess of the permissible statutory penalty for the crime." *United States v. Lo*, 839 F.3d 777, 785 (9th Cir. 2016), *quoting United States v. Vences*, 169 F.3d 611, 613 (9th Cir. 1999). We have also held that a sentence is "illegal" if it "violates the Constitution." *United States v. Torres*, 828 F.3d 1113, 1125 (9th Cir. 2016), *quoting United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007). Thus, an appeal waiver does not apply to a sentence "if it exceeds the permissible statutory penalty for the crime or violates the Constitution." *Bibler*, 495 F.3d at 624.

In this case, Wells does not have any statutory basis for challenging the terms of his sentence as illegal. Wells does not argue that the sentence exceeds the permissible statutory penalty for the crime. Instead, Wells argues that Special Condition Nos. 3 and 5 are "illegal" because the conditions violate 18 U.S.C. § 3583(d), as they are not "reasonably related to the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D)" and involve "greater deprivation of liberty than is reasonably necessary for the purposes set forth in section 3553(a)(2)(B)." Dkt. No. 7 at 14–19. But our definition of "illegal sentence" in the context of an appeal waiver does not extend so far. Indeed, we have held that a "district court's failure to comply with § 3553

does not make [a defendant's] sentence 'illegal.'" *Vences*, 169 F.3d at 613. We again decline to extend the meaning of an "illegal sentence" to encompass sentences that potentially violate section 3583(d), which governs the district court's imposition of conditions of supervised release, and section 3553, which sets forth the factors to be considered in imposing a sentence. Otherwise, a valid appeal waiver as part of a bargained-for plea agreement would be meaningless and it would allow defendants to circumvent any plea agreement and appeal waiver. Accordingly, Wells fails to challenge the terms of his sentence as "illegal" under any valid statutory grounds. We decline to overreach and exercise our jurisdiction to entertain an appeal when the plea agreement effectively waived the right to appeal his sentence.

Wells also raises several constitutional challenges to his sentence. Since *Bibler*, we have held that an exception to an appeal waiver applies to sentences that are unlawful or violate the Constitution. *See Bibler*, 495 F.3d at 624; *Watson*, 582 F.3d at 987; *Torres*, 828 F.3d at 1125; *United States v. Pollard*, 850 F.3d 1038, 1041 (9th Cir. 2017). But our caselaw has not been entirely clear on when the exception based on constitutional challenges applies or on the scope of the exception. In light of the potential ambiguity in our caselaw, we attempt to clarify the *Bibler* rule by addressing our various circuit precedent.

First, in *Joyce*, we dismissed an appeal for lack of jurisdiction when the defendant challenged his sentence on First Amendment grounds.[1]  *See Joyce*, 357 F.3d at 925

---

[1] Although *Joyce* held that we lack jurisdiction to consider the merits of a challenge, *see Joyce*, 357 F.3d at 925, the en banc court in *United States v. Jacobo Castillo* subsequently made clear that a plea

(holding that because the defendant "validly waived his right to appeal any aspect of his sentence, including the district court's imposition of special conditions of supervised release, we lack jurisdiction to consider the merits of his challenge to the computer and Internet use restrictions" on First Amendment grounds). Our holding in *Joyce* would seem to conflict with our language in *Bibler* stating that an "appeal waiver will not apply if . . . the sentence violates the law," which includes a sentence that "exceeds the permissible statutory penalty for the crime or violates the Constitution." *Bibler*, 495 F.3d at 624. But *Joyce* was decided three years prior to *Bibler* and did not address the issue of whether an appeal waiver applies to challenges that a sentence is unconstitutional. The issue was not raised by parties and the defendant in *Joyce* "agree[d] that the appeal waiver he signed prevents him from challenging the 27-month term of imprisonment." *Joyce*, 357 F.3d at 922.**²**

---

agreement's appeal waiver does not divest our court of jurisdiction to hear an appeal, *see* 496 F.3d 947, 957 (9th Cir. 2007). Rather, we generally apply the appeal waiver's preclusive effect and choose not to exercise our jurisdiction. *See Castillo*, 496 F.3d at 957 ("The preclusive effect we give to the plea agreement may depend on the nature of the plea and the circumstances in which it is brought to our attention."). Thus, we discuss *Joyce* in the context of "address[ing] the *preclusive effect* to be given the plea agreement, not the *jurisdiction* of the court." *Id.* at 956.

**²** The dissent believes that *Joyce* necessarily reached the issue of whether the appeal waiver applies to constitutional challenges to the sentence. But that is not supported by the record. Again, the issue was never presented to the *Joyce* panel, and the defendant in *Joyce* explicitly "agrees that the appeal waiver he signed prevents him from challenging the 27-month term of imprisonment" on First Amendment grounds and only "argues that the special conditions of release are not part of his 'sentence.'" *Joyce*, 357 F.3d at 922. Therefore, the court never explicitly reached the issue of whether the appeal waiver applied to the

Rather, the only issue addressed was the argument that "the special conditions of release are not part of his 'sentence,' and thus that the language of his appellate waiver does not bar this challenge." *Id.* *Joyce* is therefore silent on whether a constitutional challenge to a sentence survives an appeal waiver. Indeed, when deciding whether an intervening higher authority is clearly irreconcilable with our precedent, we look to "the *reasoning* and *analysis* in support of a holding, rather than the holding alone." *United States v. Lindsey*, 634 F.3d 541, 550 (9th Cir. 2011) (emphasis in original). In that context, we have reiterated that the only time a three-judge panel may depart from circuit precedent is when it is "clearly irreconcilable" with intervening authority. *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012). Considering that *Joyce* is not even from an intervening higher authority, it is difficult to say that a previous decision such as *Joyce* that is completely silent on a legal issue is "clearly irreconcilable" with other published opinions confronting the issue.

Second, the scope of the *Bibler* exception requires some clarification. Although "a waiver of appellate rights generally does not preclude review of a sentence that violates the Constitution," we have held that if a defendant expressly waives a certain constitutional right in the plea agreement, the waiver will still apply to any challenges based on that specific constitutional right. *Pollard*, 850 F.3d at 1043–44 (declining to address the defendant's Eighth Amendment excessive fine claim because the defendant "specifically waived 'any claim or defense under the Eighth Amendment to the United States Constitution, including, but not limited to, any claim or defense of excessive fine in any

---

defendant's constitutional challenges. Nor was it necessary to do so for the disposition of that case.

proceedings concerning the property'"). After all, plea agreements are bargained-for contracts "measured by contract law standards" and we "enforce the literal terms of the plea agreement." *Franco-Lopez*, 312 F.3d at 989 (citations omitted).

The *Bibler* exception, however, clearly carved out challenges that the sentence is illegal when a plea agreement waives "all right to appeal the sentence imposed by the Court." *Bibler*, 495 F.3d at 624. This was based on the rationale that an appeal waiver will not apply if the sentence subsequently imposed by the court is inherently unlawful. If exceptions to an appeal waiver include "an appeal where the sentence imposed is not in accordance with the negotiated agreement" or an appeal where the sentence is "not authorized by the judgment of conviction or in excess of the permissible statutory penalty for the crime," *Lo*, 839 F.3d at 785 (citations omitted), an appeal arguing that a sentence violates the Constitution certainly should also fall under the general exception that an appeal waiver does not apply to an unlawful sentence, as the Constitution is the "supreme law of the land," *Cooper v. Aaron*, 358 U.S. 1, 18 (1958). Consequently, we have stated that the "analogy between plea agreements and private contracts is imperfect . . . because the Constitution imposes a floor below which a defendant's plea, conviction, and sentencing may not fall." *Torres*, 828 F.3d at 1124–25.

Balancing the interest of preventing the district court from imposing an unlawful sentence with the interest of enforcing a plea agreement's explicit language, we interpret our precedent to limit the *Bibler* exception to constitutional challenges involving appeal waivers that waive only a defendant's "general right to appeal" and not to any constitutional challenges based on a constitutional right

specifically waived by the plea agreement. *See, e.g.*, *Pollard*, 850 F.3d at 1043; *cf. Torres*, 828 F.3d at 1124 (defendant generally waiving "the right to appeal any sentence" and "the right to appeal any other aspect of the conviction or sentence"). Indeed, *Bibler* stated that "[i]f defendants intend to preserve a larger subset of their appellate rights, this must be bargained for in the plea agreement." *Bibler*, 495 F.3d at 624. Similarly, if the government wishes to exclude a subset of a defendant's right to challenge an unconstitutional sentence, it must also be specifically bargained for in the plea agreement.

Finally, we caution that constitutional challenges to a sentence surviving an appeal waiver under the *Bibler* exception are limited to challenges that the terms of the sentence itself are unconstitutional. The exception does not allow any constitutional challenges *per se*, such as the Sixth Amendment rights to a speedy and public trial or right to confront witnesses, which are not challenges that the sentence is unconstitutional. This is consistent with cases where we have applied an appeal waiver to constitutional challenges based under the Sixth Amendment right to a public trial. *Cf. United States v. Shehadeh*, 962 F.3d 1096, 1102 (9th Cir. 2020) (affirming the district court's denial of the defendant's motion to withdraw plea agreement because the defendant's "plea was knowing and voluntary, [and] the waiver in his plea agreement bars his remaining claims that the district court violated his Sixth Amendment right to a public trial").

Guided by *Bibler* and its progeny, we conclude that a waiver of the right to appeal a sentence does not apply if (1) the defendant raises a challenge that the sentence violates the Constitution; (2) the constitutional claim directly challenges the sentence itself; and (3) the constitutional

challenge is not based on any underlying constitutional right that was expressly and specifically waived by the appeal waiver as part of a valid plea agreement.[3] Here, Wells brings several constitutional claims that directly challenge the terms of his supervised release. Wells waived his general right to appeal "any aspect" of his sentence but did not expressly waive any specific constitutional right, such as any First Amendment challenges. Following our precedent, we must address the constitutional challenges on the merits.

Except for Wells' constitutional challenges to the terms of his supervised release, which are addressed below, we enforce the appeal waiver and dismiss this appeal.

## III.

The only issues that survive the appeal waiver are Wells' challenges that the special conditions violate a constitutional right. Specifically, Wells raises three constitutional challenges: (1) Special Condition No. 3 (computer ban) is unconstitutionally vague; (2) Special Condition No. 5 (internet ban) violates his First Amendment rights; and

---

[3] The dissent critiques the *Bibler* rule as problematic and suggests that it should not be followed. But it is not our role as a panel to decide whether *Bibler* and the line of cases that have followed its rule are incorrect. *See Bibler*, 495 F.3d at 624; *Watson*, 582 F.3d at 987; *Torres*, 828 F.3d at 1125; *Pollard*, 850 F.3d at 1041. Certainly, if this case is heard en banc, the en banc court can decide if *Bibler* and its progeny should be overturned and adopt a new rule. However, we as a panel are bound by the prior published decisions of our court. *See Oregon Nat. Desert Ass'n v. U.S. Forest Serv.*, 550 F.3d 778, 782 (9th Cir. 2008) ("Typically, we are bound by earlier published decisions of our court" except for when "circuit precedent may be effectively overruled by subsequent Supreme Court decisions."). Unless *Bibler* is overturned by the en banc court or by the Supreme Court, we must faithfully apply its rule to this case.

(3) both conditions are an unconstitutional delegation of authority because the conditions contain language that specify that the restrictions are subject to the approval of the probation officer.

For the following reasons, we hold that Special Condition No. 3 is unconstitutionally vague, and we vacate and remand with instructions for the district court to clarify the condition. Special Condition No. 5 does not violate a constitutional right and we dismiss Wells' challenges to that condition. For both conditions, the district court's imposition of the restrictions subject to the approval of the probation officer is not an unconstitutional delegation of authority.

## A.

Special Condition No. 3 states: "You must not possess or use a computer without the prior approval of the probation officer. 'Computer' includes any electronic device capable of accessing the internet or processing or storing data as described at 18 U.S.C. § 1030(e)(1) (including cell phones), and all peripheral devices." As part of the statute governing computer fraud crimes, section 1030(e)(1) defines "computer" as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device, but such term does not include an automated typewriter or typesetter, a portable hand held calculator, or other similar device." 18 U.S.C. § 1030(e)(1).

In a footnote, Wells argues that to the extent Special Condition No. 3 (computer ban) includes a "reasonableness" limitation, it is "unconstitutionally vague." Dkt. No. 7 at 19

n.13.     Specifically, Wells argues that the condition is unconstitutionally vague because he "has no way of knowing which items a probation officer will deem reasonable." *Id.* Unlike Wells' other arguments that the condition is overbroad or overly harsh, which would be barred from the appeal waiver, a challenge that a condition of supervised release is unconstitutionally vague is rooted in a defendant's fundamental right to due process.    "A condition of supervised release violates due process 'if it either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'"   *United States v. Evans*, 883 F.3d 1154, 1160 (9th Cir. 2018), *quoting United States v. Hugs*, 384 F.3d 762, 768 (9th Cir. 2004).

We conclude that Special Condition No. 3 requires clarification.    The definition of "computer" under the condition potentially could be understood to encompass common household objects.    An "electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions" can include devices such as smart kitchen appliances that contain microprocessors, even though such appliances are not capable of receiving, storing, or otherwise processing materials of child pornography.  To be clear, we do not make any determination on whether the special condition is overbroad, as it is an issue that is barred by the waiver. Certainly, the district court could have simply imposed a condition that bars the use of any device that uses electricity, which perhaps would be problematic for other reasons but is not "unconstitutionally vague."    But the definition for "computer" without any clarification here can lead to a situation where "men of common intelligence must necessarily guess at its meaning and differ as to its application."  *Evans*, 883 F.3d at 1160 (citation omitted).

For instance, one would have to guess whether a digital watch fits under the definition of computer provided by section 1030(e)(1). A digital watch would seem to be an electronic device that performs logical, arithmetic, or storage functions, as it could store alarm times and other data. Furthermore, adding to the confusion is the statute's exclusion of "automated typewriter or typesetter, a portable hand held calculator, or other similar device" from the definition of "computer." 18 U.S.C. § 1030(e)(1). A digital watch could also be said to be similar to a calculator or typewriter as it performs basic time calculations and displays the time. Unless it is exactly a typewriter or calculator, a defendant would not be able to tell for certain whether an electronic device with a microprocessor is considered a "computer" for the purposes of the special condition.

Moreover, we have previously held, albeit in an unpublished disposition, that similar special condition language referencing section 1030(e)(1) is unconstitutionally vague.[4] Although *Peterson* has no precedential value, its reasoning is helpful. In *Peterson*, we considered whether a special condition of supervised release that directs the defendant to not "use or possess any computer [or] computer-related devices . . . which can communicate data via modem, dedicated connections or cellular networks" is unconstitutionally vague. *United States v. Peterson*, 776 F. App'x. 533, 534 (9th Cir. 2019). We determined that the "limiting language referencing

---

[4] A memorandum disposition is not precedential and may not be cited to the court. *See, e.g.*, *United States v. Peterson*, 776 F. App'x. 533 (9th Cir. 2019). The quotation from the above memorandum disposition has been helpful to the panel in considering the issue before us. However, we have not given it any more consideration than a well-reasoned law review article.

18 U.S.C. § 1030(e)(1) does not provide sufficient guidance" and is impermissibly vague. *Id.* There, we expressed the concern that "references were made to numerous items which would seemingly fall within the ambit of the condition, but which a reasonable person might be unaware – *e.g.* refrigerators with Internet connectivity, Fitbit™ watches, etc. Also, for example, all automobiles manufactured after 2008 are required to be equipped with computers that can send digital messages concerning the vehicle's operations through a 'controller area network.'" *Id.* at 534 n.3 (citation omitted). Thus, we remanded the special condition "for the district court to explicitly delineate that the prohibition only covers computers and computer-related devices that can access" materials with depictions of sexually explicit conduct involving children, as defined by 18 U.S.C. § 2256(2) or deemed inappropriate by the probation officer. *Id.* at 534.

To be sure, a limiting instruction that excludes only computer devices that are capable of accessing materials of sexually explicit conduct would also limit the scope of the special condition. On the other hand, one can also argue that there are presumably electronic devices that can communicate data but are not sophisticated enough to transmit any sexually explicit material. Such devices would have been banned from the special condition in its current form but would not be included with a limiting instruction. Again, we do not base our analysis and determination on whether the special condition is overly broad or not. We simply hold that a limiting instruction similar to the one we required in *Peterson* would help clarify the meaning of what devices count as a "computer" for purposes of the special condition. Such a limiting instruction would clearly indicate to Wells whether a device is barred or not. For instance, a digital watch that is only capable of displaying time would

not be barred but a smartwatch that can send and receive images, browse the internet, or otherwise access sexually explicit material would clearly be barred. It would be much more reasonable to require "men of common intelligence" to know whether a device is capable of transmitting or storing a digital file that includes materials depicting sexually explicit conduct than to decipher the meaning of "computer" under 18 U.S.C. § 1030(e)(1). *Evans*, 883 F.3d at 1160 (citation omitted).

Because Special Condition No. 3 violates a constitutional right, it is an "illegal" sentence and "the waiver in his plea agreement does not bar this appeal." *Torres*, 828 F.3d at 1125. We decline to apply the appeal waiver and exercise our jurisdiction to consider this issue. *A fortiori*, the condition is unconstitutionally vague on the merits as well. Therefore, we vacate and remand Special Condition No. 3 for the district court to delineate explicitly that the prohibition only covers computers and computer-related devices that can access sexually explicit conduct.

**B.**

Special Condition No. 5 states: "You must not access the Internet or any 'on-line computer service' at any location (including employment) without the prior approval of the probation officer. 'On-line services' include any Internet service provider, or any other public or private computer network. As directed by the probation officer, you must warn your employer of restrictions to your computer use." Wells argues that this special condition violates the Constitution because it unnecessarily restricts his First Amendment rights.

"While a district court's discretion to set conditions of supervised release is broad even when those conditions

affect fundamental rights, restrictions infringing upon fundamental rights are reviewed carefully." *United States v. Soltero*, 510 F.3d 858, 866 (9th Cir. 2007) (internal quotation marks and citations omitted). To determine whether conditions of supervised release impermissibly infringe upon a defendant's rights, "a reviewing court must inquire whether the limitation[ ] [is] primarily designed to affect the rehabilitation of the probationer or insure the protection of the public." *United States v. Bee*, 162 F.3d 1232, 1235 (9th Cir. 1998) (internal quotation marks and citation omitted). Thus, even if a condition infringes a defendant's fundamental right, "[a] restriction on a defendant's [constitutional right] is nonetheless valid if it":

> (1) is reasonably related to the goals of deterrence, protection of the public, and/or defendant rehabilitation; (2) involves no greater deprivation of liberty than is reasonably necessary to achieve these goals; and (3) is consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. § 994(a).

*Soltero*, 510 F.3d at 866 (internal quotation marks and citations omitted).

For the following reasons, we reject Wells' First Amendment challenges to Special Condition No. 5. The special condition no doubt infringes on Wells' right to free speech by restricting his internet access.[5] But the district

---

[5] To be clear, Wells' reliance on *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017), is misguided. *Packingham* involved "severe restrictions on persons who already have served their sentence and are no longer subject to the supervision of the criminal justice system." 137

court imposed the condition for purposes of rehabilitation and to "insure the protection of the public." *Bee*, 162 F.3d at 1235. Wells was convicted for possession of child pornography and the sheer volume of the material he possessed is especially troubling (approximately 20,000 files). Even though internet access clearly enables individuals to engage in a wide array of protected First Amendment activity, it is also clearly what enables Wells to gain access to child pornography. Moreover, Wells not only used the internet to use P2P applications to obtain child pornography, but also used search terms related to child pornography to browse the web and various social media accounts. At the sentencing hearing, the district court considered Wells' objections and imposed the special condition because "there is a strong link between child pornography and the internet, and the need to protect the public, particularly children, from sex offenders; but also to protect the victims of these child pornography offenses from being revictimized every time they keep getting these hundreds and hundreds of victim witness letters saying yet someone else has viewed your image of you being raped when you were two years old."

Indeed, we have repeatedly held that "a defendant's free speech rights may be infringed to 'effectively address [his] sexual deviance problem.'" *United States v. Gnirke*, 775 F.3d 1155, 1160 (9th Cir. 2015), *quoting United States v. Rearden*, 349 F.3d 608, 619 (9th Cir. 2003). In *Rearden*, a defendant challenged a special condition that prohibited him from "possession or use of a computer with access to any online service at any location without prior approval of

_____

S. Ct. at 1737. On the other hand, Wells is an individual currently subject to the supervision of the criminal justice system and specific supervised release conditions tailored to his conviction and circumstances.

the probation officer." *Rearden*, 349 F.3d at 620. Although we recognized "the importance of the Internet for information and communication," we held that "limiting [a defendant's] Internet access without prior approval of the Probation Office is reasonably related to the offense that involved e-mail transmissions of quite graphic child pornography, and to the important goal of deterring him during the period of supervision from reverting to similar conduct, and thus, to rehabilitation and protecting the public." *Id.* at 620–21. To be sure, we have also held that "because access to the Internet has become so vital, courts have upheld conditions prohibiting all use of the Internet only in limited circumstances." *United States v. LaCoste*, 821 F.3d 1187, 1191 (9th Cir. 2016). But one of the limited circumstances that allow for a broad internet restriction is "when use of the Internet was 'essential' or 'integral' to the offense of conviction." *Id.*; *see also United States v. Antelope*, 395 F.3d 1128, 1142 (9th Cir. 2005) (affirming conditions of supervised release prohibiting access to any on-line computer service because "the Internet was nevertheless essential to the commission of [defendant's] crime: He first contacted the federal agents through joining a child pornography-oriented online group"). Here, the use of the internet was essential and integral to the offense: the receipt of child pornography.

Because Special Condition No. 5 does not violate the Constitution, it is not an "illegal" sentence. In light of Wells' waiver of the right to appeal, we dismiss this claim. *See Watson*, 582 F.3d at 988 (dismissing appeal on waiver grounds because the "condition of supervised release . . . did not make [the defendant's] sentence illegal).

**C.**

Finally, both Special Condition Nos. 3 and 5 provide that the restrictions apply only when it is "without the prior approval of the probation officer." Wells challenges that the district court's decision to subject restrictions to the approval of the probation officer is an unconstitutional delegation of authority. For the following reasons, we reject this challenge.

Since "[u]nder our constitutional system[,] the right to . . . impose the punishment provided by law is judicial," "a probation officer may not decide the nature or extent of the punishment imposed upon a probationer." *United States v. Stephens*, 424 F.3d 876, 881 (9th Cir. 2005) (citations omitted). But once "the court makes the determination of whether a defendant must abide by a condition, and how . . . a defendant will be subjected to the condition, it is permissible to delegate to the probation officer the details of where and when the condition will be satisfied." *Id.* at 880.

The record shows that Wells did not challenge the special conditions on this basis before the district court. In his written objections to the proposed special conditions of supervised release, Wells only argued that the blanket prohibition on computers and access to the internet was improper. Nor did he raise this argument at any time during the sentencing hearing. In general, we do not "review an issue not raised below unless necessary to prevent manifest injustice." *Int'l Union of Bricklayers & Allied Craftsman Loc. Union No. 20, AFL-CIO v. Martin Jaska, Inc.*, 752 F.2d 1401, 1404 (9th Cir. 1985). Here, we need not do so because the special conditions are not manifestly unjust.

But even considering the merits of the challenge, the special conditions are not an unconstitutional delegation of

authority to the probation office.  When a defendant "did not raise the issue before the district court, we review for plain error." *United States v. Yijun Zhou*, 838 F.3d 1007, 1010 (9th Cir. 2016) ("The ordinary rule in criminal cases—established by Federal Rule of Criminal Procedure 52(b) and by Supreme Court precedent—is that 'plain error' review applies to arguments raised for the first time on appeal. *See* Fed. R. Crim. P. 52(b).").  The district court imposed conditions that Wells may not use any computer or access the internet (whether it is appropriate to have computer and internet access) and delegated to the probation office the implementation of this condition (when it may be appropriate to allow an exception).  Moreover, the added limitation of requiring prior approval of the probation officer to Special Conditions Nos. 3 and 5 ensures that the conditions are no more restrictive than necessary.  The requirement for the approval of the probation officer gives the flexibility to allow for some exceptions to the total ban on computers and internet access if the probation office deems the use safe and without risk of obtaining child pornography.

Our decision in *Blinkinsop* is instructive.  *See United States v. Blinkinsop*, 606 F.3d 1110 (9th Cir. 2010).  There, we vacated a condition requiring the defendant "not go to or loiter near school yards, parks, play grounds, arcades, or other paces [*sic*] primarily used by children under the age of 18" to allow the district court to consider amending the provision and allow an exception for school events involving the defendant's own children with the "written permission of his probation officer prior to each such attendance."  *Id.* at 1119–22.  This is because the "probation officer, who has regular contact with a sex offender on supervised release, . . . is in the best position to determine the appropriate contact with minors for a released defendant convicted of a child-

pornography crime." *Id.* at 1121. Similarly, the probation officer here is in the best position to determine when a use of computer devices or internet service is appropriate for Wells. Thus, we have repeatedly followed *Blinkinsop* and summarily rejected similar arguments that a district court abuses its discretion by delegating to the probation office the implementation of a condition of supervised release. *See, e.g.*, *United States v. Stewart*, 671 F. App'x 614 (9th Cir. 2016).

**DISMISSED** in part; **VACATED** and **REMANDED** in part.

BEA, Circuit Judge, dissenting:

A case controlled by contradictory precedents must be decided by the court sitting en banc. *Atonio Wards Cove Packing Co.*, 810 F.2d 1477, 1478–79 (9th Cir. 1987). *United States v. Bibler*, 495 F.3d 621 (9th Cir. 2007) and *United States v. Joyce*, 357 F.3d 921 (9th Cir. 2004), both control this case yet are entirely irreconcilable with one another. Therefore, this case should be decided by the court sitting en banc, not by a three-judge panel. For this reason, I respectfully dissent from the majority opinion.

## I. *Joyce* and *Bibler* are irreconcilable.

In *Joyce*, our court dismissed an appeal based on a valid appeal waiver even though the defendant claimed his sentence violated his First Amendment rights. *Joyce*, 357 F.3d at 925. In the words of Judge Gould's dissent in *Joyce*, "what a court *does* is a more important statement of its holding for *stare decisis* purposes than what it merely *says*." *Id.* at 927 (Gould, J., dissenting) (emphasis in original). By

dismissing the appeal on the basis of a valid appeal waiver, even where the appellant claimed a violation of his constitutional rights, the *Joyce* panel necessarily held that no "exception" to the appeal waiver applied because of the claim that the sentence violated the appellant's constitutional rights. Thus, *Joyce*'s holding stands for the proposition that a claimed violation of a constitutional right cannot except an appellant from being bound by his valid appeal waiver. When confronted with these facts, the court must dismiss the appeal.

*Bibler*, which was decided three years after *Joyce* but failed to cite it, reached the merits of the appeal, despite the appellant's valid appeal waiver, because it held that an exception to valid appeal waivers exists if the appellant claims a violation of a constitutional right. *Bibler*, 495 F.3d at 624.

"Where a panel confronts an issue germane to the eventual resolution of the case and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit . . . ." *United States v. Johnson*, 256 F.3d 895, 914 (9th Cir. 2001) (en banc). The panel is therefore bound simultaneously by the contradictory precedents of *Joyce* and *Bibler*.

The majority attempts to escape this result by distinguishing *Joyce* from *Bibler*, but its efforts are unavailing. The only difference between *Joyce* and *Bibler* is that *Bibler*'s counsel styled the constitutional claim as an "exception" to the valid appeal waiver instead of challenging the validity of the appeal waiver directly. But two holdings are irreconcilable based on their facts and the law, not whether attorneys in the cases styled their arguments with different words.

Essentially, the majority claims that *Joyce*'s holding is not binding precedent because the parties in that case did not argue that the First Amendment challenge created an exception to the appeal waiver, and therefore *Joyce* did not reach the issue. That conclusion is simply incorrect. *Joyce* necessarily reached the issue of whether the appeal waiver was effective when it dismissed the appeal on waiver grounds. For this reason, *Joyce* cannot be persuasively distinguished from *Bibler*, and this irreconcilable conflict must be resolved by the en banc court.

## II.  The en banc court should follow *Joyce*.

In the event this case is heard en banc, there are good reasons to follow *Joyce* over *Bibler*.

First, the *Bibler* rule is a chimera.[1] For the proposition that appeal waivers are not valid to bar challenges to illegal sentences, *Bibler* cites to four cases: *United States v. Portillo-Cano*, 192 F.3d 1246 (9th Cir. 1999) (holding that an appeal waiver was not valid because the defendant had not been given a description of the nature of the charges against him in violation of Rule 11 of the Federal Rules of Criminal Procedure), *United States v. Buchanan*, 59 F.3d 914 (9th Cir. 1995) (holding that an appeal waiver was not valid because the judge repeatedly told the defendant that he had the right to appeal his sentence after the defendant had signed the appeal waiver), *United States v. Bolinger*, 940 F.2d 478, 479–80 (9th Cir.1991) (holding that an appeal waiver *was* valid but recognizing an exception to a valid

---

[1] "A fabled fire-breathing monster of Greek mythology, with a lion's head, a goat's body, and a serpent's tail," or "[a]n organism . . . in which tissues of genetically different constitution co-exist as a result of grafting, mutation, or some other process." *Chimera*, Oxford English Dictionary Online (2020).

appeal waiver where the sentence imposed is not in accordance with the negotiated plea agreement), and *United States v. Gordon*, 393 F.3d 1044 (9th Cir. 2004) (holding that an appeal waiver was not valid to waive an appeal of a restitution order which violated a federal statute). Note that none of these cases involved an appeal of a sentence on constitutional grounds which rendered the sentence "illegal."

For the proposition that a sentence is illegal if it violates the constitution, *Bibler* cited to *United States v. Fowler*, 794 F.2d 1446 (9th Cir. 1986). In *Fowler*, the district court ordered the defendant to pay the costs of his prosecution, as authorized by the statute of conviction, after he was convicted of three counts of willfully filing false income tax returns. *Id.* at 1448. The defendant appealed, arguing that the imposition of costs was an unconstitutional burden on his right to cross-examination, jury trial, and compulsory process. *Id.* at 1449. The *Fowler* court held that requiring the defendant to pay the costs of his prosecution was not unconstitutional and affirmed the sentence as legal under Federal Rule of Criminal Procedure 35. [2] *Id.* at 1450.

*Fowler* decided whether a sentence was illegal for purposes of a Rule 35 motion. It did not decide what constitutes an illegal sentence for the purpose of rendering an otherwise valid appeal waiver ineffective.

---

[2] When *Fowler* was decided, Rule 35 allowed a criminal defendant to move the court to "correct an illegal sentence" or "correct a sentence imposed in an illegal manner." *Id.* at 1449 (internal citations omitted). However, Rule 35 has since been amended to allow a defendant to move the district court to correct a defendant's sentence within fourteen days if the sentence resulted from "arithmetical, technical, or other clear error." Fed. R. Crim. Proc. 35.

Thus, *Bibler* combined two distinct lines of cases to create a hybrid rule that appeal waivers are never valid to bar appeals of sentences when those appeals are brought on constitutional grounds.

This rule is problematic for several reasons. There is nothing about waiving the right to appeal, even on constitutional grounds, that is entitled to special protections from this court. Waiver of constitutional rights is a common occurrence in the criminal law context; every time a defendant takes the stand in his own defense, he waives his right not to testify. And "[t]here is, of course, no constitutional right to an appeal." *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

But most importantly, the *Bibler* rule puts judges in the awkward position of reaching the merits of an appellant's constitutional claims before deciding whether the appeal should be dismissed on waiver grounds. This backwards analysis is reflected in the majority's own opinion and has the unintended consequence of essentially nullifying all appeal waivers. Under *Bibler*, all a defendant must do is *argue*, even baselessly, in an appellate brief that his sentence violates the Constitution, and he can evade what was an otherwise valid and binding appeal waiver.

Reaching the merits of an appeal before dismissing it forces judges to answer more questions than necessary to dispose of a case, which violates the cardinal principle of judicial restraint that "if it is not necessary to decide more, it is necessary not to decide more." *PDK Labs. Inc. v. Drug Enforcement Admin.*, 362 F.3d 786, 799 (C.A.D.C. 2004) (Roberts, J., concurring in part and concurring in judgment).

The *Bibler* rule is also like the two-step qualified immunity analysis from *Saucier v. Katz*, 533 U.S. 194

(2001), which required courts to determine first whether the plaintiff alleged a violation of a constitutional right and next determine whether that right was clearly established, in that order. The Supreme Court overruled *Saucier* in *Pearson v. Callahan*, 555 U.S. 223, 237 (2009), holding that courts could answer these two questions in any order. The court so held because, like the *Bibler* rule, *Saucier* "require[d] courts unnecessarily to decide difficult constitutional questions when there is available an easier basis for the decision . . . ." *Brosseau v. Haugen*, 543 U.S. 194, 201–02 (2004) (Breyer, J., joined by Scalia and Ginsburg, JJ., concurring).

The majority's efforts to "clarify" *Bibler* unfortunately only muddy the waters. The majority sets forth a new rule which would limit the scope of the *Bibler* exception to apply only in cases where appellants have waived a "general right to appeal" and not an appeal based on a "specific" constitutional right. But this is a distinction without a difference. Prosecutors will easily avoid the majority's new rule by incorporating by reference the Constitution and its amendments in the text of each appeal waiver—or perhaps they will begin attaching the Bill of Rights as an addendum to their plea agreements.

If *Joyce* were the applicable rule in this case, I would concur in the judgment to the extent that it dismisses Wells's appeal. However, because it is not within my authority to apply *Joyce* where *Bibler*'s irreconcilable holding simultaneously binds the court, I respectfully dissent.