NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

OCT 12 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 21-10343 |
| Plaintiff-Appellee, | D.C. No. 1:19-cr-00019-JAO-1 |
| v. | |
| EDWIN N. LINDSEY, Jr., | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the District of Hawaii
Jill Otake, District Judge, Presiding

Submitted October 4, 2023**
University of Hawaii Manoa

Before: BERZON, MILLER, and VANDYKE, Circuit Judges.

Edwin Lindsey appeals from the denial of a suppression motion and from his sentence after pleading guilty to possession of 50 grams or more of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). We affirm in part and dismiss in part.

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

1. With respect to the denial of his motion to suppress evidence discovered after his arrest, Lindsey argues that the police lacked probable cause to arrest him because they did not confirm that he was driving on a suspended license until after he was arrested. We disagree.

As an initial matter, the police had probable cause to arrest Lindsey based on his own statements to them that he did not have a license. Even after the police asked him to clarify whether he meant he did not have a license "at all," or whether he meant he did not have his license with him, he repeated that he did not have a license. His responses supplied probable cause that he was driving without a license.

Even setting aside Lindsey's statements, the district court did not clearly err in finding that the police first confirmed that Lindsey's license was suspended before arresting him. The arresting officer testified at the hearing that he did not arrest Lindsey until after his partner checked Lindsey's license status, and the district court found him credible. The fact that the time listed on the arresting officer's report, 8:07 am, was close in time to the timestamp of the database check, 8:07:58 am, does not contradict his testimony. The arresting officer testified that he did not use a stopwatch to record the time of arrest; the times in his report are not exact but are to the best of his recollection; and his report was not written contemporaneously.

2

2. Lindsey next contends that the police engaged in an illegal search of his car, so the evidence discovered as a result should have been suppressed. Specifically, he challenges the district court's factual findings that the arresting officer saw a large amount of cash in plain view when he looked through Lindsey's open car window, and that the police did not interfere with the bag. *See Horton v. California*, 496 U.S. 128, 133 (1990) ("If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy."). Again, we conclude that the district court did not clearly err.

The district court's findings are supported by the record. The arresting officer testified that he "observed an open black nylon bag, and at the top of this nylon bag was a large amount of newly folded U.S. currency." He also testified that he did not "reach into the window at any time and unzip that bag." And he testified that he did not see his partner ever enter the vehicle or reach his hand into the window and unzip the bag. Further, he testified that he would have noticed had someone reached into the car while he was standing there.

Although Lindsey contends that the photographs in Exhibits 2, 4, 5, 6, and 7, establish that the police must have interfered with the bag because the cash was not visible in all the photographs, the district court reasonably found that any differences between the photographs were explained by the fact that the photographs "were taken at different angles."

3

3. Finally, Lindsey seeks to challenge the district court's determination during sentencing that he is ineligible for safety valve relief under 18 U.S.C. § 3553(f). We dismiss this part of his appeal because we conclude that, as part of his plea agreement, Lindsey knowingly and intelligently waived the right to appeal any sentence that does not exceed the maximum guideline range.

"A defendant's waiver of his appellate rights is enforceable if the language of the waiver encompasses his right to appeal on the grounds raised, and if the waiver was knowingly and voluntarily made." *United States v. Wells*, 29 F.4th 580, 583 (9th Cir. 2022) (quoting *United States v. Joyce*, 357 F.3d 921, 922 (9th Cir. 2004)). Lindsey's plea agreement on its face waives his right to appeal "any sentence within the Guidelines range as determined by the Court at the time of sentencing" as well as "the manner in which the sentence . . . was determined, on any ground whatsoever." This waiver unambiguously encompassed the appeal of the safety valve issue, which concerns obtaining a sentence below the mandatory minimum.

In signing the agreement, Lindsey acknowledged that he "knowingly and voluntarily waives the right to appeal, except as indicated." Moreover, the district court conducted a detailed plea colloquy and ensured that Lindsey received information about the statutory minimum and maximum sentences, that he understood how his sentence would be determined, and that his attorney had

4

discussed sentencing with him. Although Lindsey initially stated during the colloquy that his attorney had not discussed how the sentencing guidelines might apply in his case, Lindsey subsequently clarified that his attorney did discuss sentencing with him.

Lindsey contends that, due to a decision issued by this court after he signed the plea agreement, *United States v. Lopez*, 998 F.3d 431 (9th Cir. 2021), his waiver was not knowing or intelligent. Before *Lopez*, Lindsey maintains, he could not have understood that he was potentially eligible for the safety valve. Even if one considers *Lopez* a change in the law,[1] this argument is foreclosed by precedent. *United States v. Johnson*, 67 F.3d 200 (9th Cir. 1995), held that although the defendant did not understand at the time he entered into his plea agreement that he would potentially be eligible for the safety valve—because, in that case, the safety valve provision was not enacted until after the defendant entered his plea—that circumstance did not render his waiver of appeal of his sentence unknowing or unintelligent. *Id*. at 201–03. We therefore conclude that Lindsey waived his right to appeal on the safety valve issue.

**AFFIRMED IN PART, DISMISSED IN PART.**

---

[1] *Lopez* involved an initial interpretation of an amendment to the safety valve provision. *See* 998 F.3d at 432–33 (construing 18 U.S.C. § 3553(f)(1)(A)–(C)).